[Civ. No. 34502. First Dist., Div. Three. Mar. 31, 1975.]

RANDOLPH A. HANKLA, Plaintiff and Appellant, v.
GOVERNING BOARD OF THE ROSELAND SCHOOL DISTRICT
OF SONOMA COUNTY, Defendant and Respondent.

646

[black redaction bar]

[black redaction bar]

## COUNSEL

A. Leonard Bjorklund, Jr., and Christopher R. Savage for Plaintiff and Appellant.

James P. Botz, County Counsel, and John C. Gaffney, Assistant County Counsel, for Defendant and Respondent.

## OPINION

SCOTT, J.—Randolph Hankla appeals from denial of his petition for writ of mandate or prohibition seeking reinstatement as a certified permanent employee of the Roseland School District.

On April 1, 1971, while Hankla was the principal of the Shepard Elementary School in the Roseland School District, he was charged with violations of Penal Code section 272 (contributing to the delinquency of a minor by causing the minor to place his hand on Hankla's penis) and Penal Code section 314 (indecent exposure). Upon being informed of the charges, respondent immediately placed Hankla upon compulsory leave of absence pursuant to Education Code section 13409 (compulsory leave upon charge of commission of sex offense). Hankla's motion to sever the counts was granted on or about May 27, 1971. On or about July 6, 1971, the jury acquitted Hankla of the section 314 charge.

Jury trial of the section 272 charge commenced on or about October 13, 1971. On October 22, 1971, the jury was unable to agree to a verdict and mistrial was declared. Thereafter, on October 29, 1971, the district attorney filed an amended complaint in three counts essentially fractionalizing the section 272 charge.

On November 18, 1971, the court set the trial date for December 21, 1971. Hankla objected to the trial date for, among other reasons, denial of speedy trial. The objections were overruled. On December 15, Hankla sought a writ of prohibition/mandate in the superior court. On January

17, 1972, the writ was denied. Hankla filed a petition for writ of mandamus and/or prohibition in the Court of Appeal on February 15, 1972. Stay of the trial set for March 7, 1972, was ordered by the Court of Appeal. On June 26, 1972, the Court of Appeal filed its opinion ordering the municipal court to dismiss the charge for failure to give Hankla a speedy trial.[1]

On May 11, 1972, prior to determination of the section 272 charge, respondent adopted a resolution authorizing notice of intention to dismiss Hankla. In a letter mailed to Hankla (see discussion in Part II, *infra*), the resolution was recited, the charges were enumerated, a form for demand for hearing of charges was enclosed, and notice was given that it was the intention of the board to dismiss Hankla unless before the expiration of 30 days from the date of service of the notice upon him, he demanded a hearing as provided by law.[2] The charges are conceded by respondent to be "largely based on the events which gave rise to the criminal complaint."

The notice was attempted to be served upon Hankla by *certified* mail. James Luney, a superintendent at the Santa Rosa main office of the post office, described the post office procedure for certified mail. Certified mail must be signed for by the addressee. If no one were at the address, then a notice would be left in the mailbox that the certified mail could be obtained either by going to the post office or by requesting another attempt at delivery. After five days, if the addressee does not pick up the mail or request another attempt at delivery, the post office sends a duplicate original of the notice to the addressee. After a total of 15 days, if the mail remains unclaimed, it is returned to the sender.

The notice was postmarked May 12, 1972. Thereafter delivery was attempted at the Hankla home. No one was there to receive the mail and a notice was left on May 13, 1972. No one claimed the mail. The duplicate notice was left at the Hankla home on May 19, 1972. The mail remained unclaimed and on May 28, 1972, it was returned to the sender, respondent.

---

[1]*Hankla* v. *Municipal Court* (1972) 26 Cal.App.3d 342 [102 Cal.Rptr. 896].

[2]That portion of the notice which stated: "NOW, THEREFORE, BE IT RESOLVED that in accordance with Section 13409 of the Education Code of the State of California, said compulsory leave of absence is hereby extended," may be considered either as a nullity because the Penal Code section 272 proceedings had not been concluded and Hankla was still on compulsory leave because of that charge, pursuant to section 13409, or in effect a notice of suspension, pursuant to section 13408. This point is irrelevant, however, in view of our holding and we do not decide it.

Hankla denied receiving the two notices. He testified that he and his wife worked during the day; that the mailbox was on his front porch; that he had been bothered by children coming onto the premises, and that he had lost mail before. Mrs. Hankla testified that she had not seen either notice.

A secretary in the legal department of the superintendent of schools testified that she mailed a courtesy copy of the notice of intention to dismiss on May 12, 1972, to Hankla's attorney. Both Hankla's attorney and his associate denied ever receiving the courtesy copy. Hankla, his attorney and the associate each testified that his first knowledge of respondent's intention to dismiss Hankla came on or about June 21, 1972, after the 30-day period during which Hankla was to request a hearing, but before the June 26, 1972, Court of Appeal decision concerning the dismissal of the Penal Code section 272 charge was filed.

Hankla's attorney thereafter wrote to respondent requesting that the dismissal be set aside because of lack of notice to Hankla and that a hearing be granted. Subsequently, Hankla's attorney telephoned respondent's attorney and advised him that Hankla had refused to accept service of the letter of dismissal. The attorney denied such was the substance of his telephone conversation.

I. Hankla contends that once criminal charges are made and an employee is placed upon compulsory leave of absence, the school district should be required to await the outcome of the criminal process before pursuing dismissal of the employee. It is conceded by respondent that the facts upon which the notice of dismissal was predicated are substantially the same as those alleged in the criminal charges against Hankla, that is, the violations of Penal Code section 314 and Penal Code section 272.

■ We begin with the consideration that these statutes (Ed. Code, § 13403 et seq.) have as their object the termination of a valuable right of a permanent employee, that of continued employment. They are to be strictly construed. (*Karbach* v. *Board of Education* (1974) 39 Cal.App.3d 355, 363 [114 Cal.Rptr. 84]; *Fresno City H. S. Dist.* v. *De Caristo* (1939)

33 Cal.App.2d 666, 672 [92 P.2d 668]; cf. *Board of Trustees* v. *Porini* (1968) 263 Cal.App.2d 784, 789 [70 Cal.Rptr. 73].)

■ The provisions of Education Code section 13409[3] require compulsory leave of absence upon an employee's being charged with violation of Penal Code section 314 (indecent exposure) or Penal Code section 272 (contributing to the delinquency of a minor. (Ed. Code, § 12912, subds. (c), (e).)[4]

[3]Education Code section 13409 provides:

"Whenever any certificated employee of a school district is charged with the commission of any sex offense as defined in Section 12912 by complaint, information or indictment filed in a court of competent jurisdiction, the governing board of the school district shall immediately place the employee upon compulsory leave of absence for a period of time extending for not more than 10 days after the date of the entry of the judgment in the proceedings. The governing board of the school district may extend the compulsory leave of absence of the employee beyond such period by giving notice to the employee within 10 days after the entry of judgment in the proceedings that the employee will be dismissed at the expiration of 30 days from the date of service of the notice, unless the employee demands a hearing as provided in . . . *this article.*

"Any employee placed upon compulsory leave of absence pursuant to this section shall continue to be paid his regular salary during the period of his compulsory leave of absence if and during such time as he furnishes to the school district a suitable bond, or other security acceptable to the governing board, as a guarantee that the employee will repay to the school district the amount of salary so paid to him during the period of the compulsory leave of absence in case the employee is convicted of such charges, or fails or refuses to return to service following an acquittal of the offense or dismissal of the charges. If the employee is acquitted of the offense, or the charges against him are dismissed, the school district shall reimburse the employee for the cost of the bond upon his return to service in the school district.

"If the employee does not elect to furnish bond, or other security acceptable to the governing board of the district, and if the employee is acquitted of the offense, or the charges against him are dismissed, the school district shall pay to the employee his full compensation for the period of the compulsory leave of absence upon his return to service in the school district.

"Whenever any certificated employee of a school district is charged with the commission of any narcotics offense as defined in Section 12912.5, or a violation of subdivision 1 of Section 261 of the Penal Code, Sections 11530 to 11532, . . . inclusive, 11540, or 11910 to 11915, . . . inclusive, insofar as such sections relate to subdivision (c) of Section 11901, of the Health and Safety Code, by complaint, information, or indictment filed in a court of competent jurisdiction, the governing board of the school district may immediately place the employee upon compulsory leave in accordance with the procedure in this section." (Amended by Stats. 1971, ch. 361, § 8, p. 722, operative Mar. 7, 1973.)

The 1971 amendment, substituting the words "this article" for "Sections 13313, 13327, 13388, and Sections 13403 to 13441, inclusive," which amendment appears in several sections of Article V, appears to do no more than make clear the scope of the hearings and causes which can be evaluated by the school board, and does not assist us in resolving the issue presented in this case.

[4]Education Code section 12912 provides, in part:

" 'Sex offense' as used in Sections *13175,* 13207, *13220.16,* 13218, 13255, and 13586 means any one or more of the offenses listed below:

"  ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·

Upon conviction of such an offense it is purely a ministerial duty of the school board to discharge the employee. (*DiGenova* v. *State Board of Education* (1955) 45 Cal.2d 255, 260 [288 P.2d 862]; Ed. Code, § 13586.) The mere fact of his conviction disables him from further employment. It is not necessary that there be a hearing on the grounds for dismissal.

In the event the person so charged is acquitted, or the charges are otherwise dismissed, section 13409 provides for a hearing upon notice, to determine whether the employee should be dismissed pursuant to the causes set forth in section 13403.[5] The school board has the right to extend the compulsory leave of absence pending that determination. Section 13409 provides that notice of that extension shall be given "within 10 days after the entry of judgment in the proceedings." The language must be interpreted as meaning 10 days after entry of judgment of acquittal or dismissal in the criminal proceedings, because, as previously noted, no hearing is necessary if the employee is convicted.

It is clear that acquittal of an employee in a criminal proceeding does not bar subsequent dismissal proceedings under the causes set forth in section 13403. (*Board of Education* v. *Calderon* (1973) 35 Cal.App.3d

---

"(c) Any offense defined in Section 314 of the Penal Code committed on or after September 15, 1961.

"$\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$ $\cdot$

"(e) Any offense involving lewd and lascivious conduct under Section 272 of the Penal Code committed on or after September 15, 1961." (Amended by Stats. 1970, ch. 557, § 32, p. 1110, operative July 1, 1973.)

The 1970 amendment substituted section 13175 for 13130, and added section 13220.16. It does not affect our decision.

[5]Education Code section 13403 provides:

"No permanent employee shall be dismissed except for one or more of the following causes:

(a) Immoral or unprofessional conduct.

(b) Commission, aiding, or advocating the commission of acts of criminal syndicalism, as prohibited by Chapter 188, Statutes of 1919, or in any amendment thereof.

(c) Dishonesty.

(d) Incompetency.

(e) Evident unfitness for service.

(f) Physical or mental condition unfitting him to instruct or associate with children.

(g) Persistent violation of or refusal to obey the school laws of the state or reasonable regulations prescribed for the government of the public schools by the State Board of Education or by the governing board of the school district employing him.

(h) Conviction of a felony or of any crime involving moral turpitude.

(i) Violation of *Section 9031* of this code or conduct specified in Section 1028 of the Government Code, added by Chapter 1418 of the Statutes of 1947.

(j) Violation of any provision in *Sections* 12952 to 12958, inclusive, of this code.

(k) Knowing membership by the employee in the Communist Party." (Amended by Stats. 1971, ch. 361, § 1, p. 720, operative Mar. 7, 1973.)

The 1971 amendment substitutes section 9031 for 8455. It does not affect our decision.

490 [110 Cal.Rptr. 916].) The procedure for dismissing an employee is set forth in section 13404 et seq. of the Education Code. (Cf. 43 Cal.Jur.2d, Schools, §§ 483-493; Coan, *Dismissal of California Probationary Teachers* (1964) 15 Hastings L.J. 284, 294-296.) Respondent here would not have been prohibited from pursuing dismissal proceedings on the basis of the facts concerning the Penal Code section 314 charge, inasmuch as that proceeding had concluded prior to the giving of notice to Hankla.

Education Code section 13409 addresses itself primarily to 1) immediate removal of a certified employee if charged with certain crimes, and 2) the payment of salary during suspension. Other sections, such as 13408 providing for suspension of a permanent employee without salary for other reasons, and 13411 providing for suspension of a permanent employee for mental disability, like section 13409, concern themselves principally with subjects other than hearing process to determine the validity of the charges. Although each of these sections provides for a hearing and notice procedure, those provisions can only be reasonably interpreted to reassert the right of hearing, as articulated in section 13404, for any of the causes of dismissal as set forth in sections 13403 and 13403.5.

It appears that the sole purpose of including the notice of hearing language in section 13409 is to give the school district the opportunity to continue an employee on compulsory leave of absence in the event it chooses not to bring dismissal proceedings until after the conclusion of the criminal charges. Thus, even though the statutes are to be strictly construed in an employee's favor, the school district need not await the outcome of the criminal proceedings before instituting its dismissal proceedings.

Hankla contends: 1) How can an employee make an intelligent decision as to whether to testify at the dismissal proceedings with criminal charges pending? As a practical matter, an employee is required to testify at a dismissal proceeding. To say, as the trial court did, that he has the right to claim privilege against self-incrimination is to ignore the realities of the situation. 2) How can a school district make an intelligent, sensitive decision to dismiss until it has learned the outcome of the criminal proceedings?

In support of his first contention, appellant urges that to permit the dismissal proceedings before disposition of the criminal case would compromise his right not to incriminate himself, provided for in the

Fifth Amendment. That concern is resolved by several holdings making his testimony at the dismissal hearing inadmissible in a later criminal prosecution. (*Lefkowitz* v. *Turley* (1973) 414 U.S. 70 [38 L.Ed.2d 274, 94 S.Ct. 316]; cf. *Garrity* v. *New Jersey* (1967) 385 U.S. 493 [17 L.Ed.2d 562, 87 S.Ct. 616]; *Gardner* v. *Broderick* (1968) 392 U.S. 273 [20 L.Ed.2d 1082, 88 S.Ct. 1913]; *Sanitation Men* v. *Sanitation Comm'r.* (1968) 392 U.S. 280 [20 L.Ed.2d 1089, 88 S.Ct. 1917]; Witkin, Cal. Evidence (2d ed.) 1974 Supp., § 899A, pp. 561-565.) As to Hankla's second concern, the school district can make an intelligent decision the way it does in other dismissal proceedings: by hearing the facts of the case and passing on the conduct complained of and its connection to an employee's job performance. (Cf. *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 227 [82 Cal.Rptr. 175, 461 P.2d 375], and its progeny.)

There is no language in article 5 of the Education Code precluding a school district from immediately commencing dismissal proceedings upon any of the grounds set forth in Education Code section 13403 or section 13403.5, even though there may be pending criminal charges against the employee based upon the exact same facts.

■ We hold that when a certified permanent employee is placed on compulsory leave of absence pursuant to Education Code section 13409, a school district has the option of 1) awaiting the outcome of the criminal proceedings before pursuing dismissal proceedings, or 2) pursuing dismissal proceedings at any time prior to the conclusion of criminal proceedings pursuant to Education Code section 13404 et seq. for cause as set forth in Education Code section 13403.

II. ■ Appellant urges that he did not receive notice of the intent to dismiss as required by law, and therefore his dismissal was unlawful.

Education Code section 13405 provides in pertinent part: "The notice [of the intent to dismiss] shall not be given between May 15th and September 15th in any year. It shall be in writing and be served upon the employee personally or by United States *registered* mail addressed to him at his last known address. . . ." (Italics added.) Certified mail may be used. (Ed. Code, § 31.)

Section 13406 of the Education Code provides: "If the employee does not demand a hearing by filing a written request for hearing with the

governing board, he may be dismissed at the expiration of the 30-day period." Thus, the hearing may be waived. (*Tucker* v. *S. F. Unified School Dist.* (1952) 111 Cal.App.2d 875, 883 [245 P.2d 597].)

Respondent attempted to effect service of the notice of intent to dismiss by certified mail. Service of process by any form must be that notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314 [94 L.Ed. 865, 873, 70 S.Ct. 652]; cf. 1 Witkin, Cal. Procedure (2d ed.) Jurisdiction, § 82.)

"Generally speaking, substituted and constructive notices are not favored in law and are countenanced only as a matter of necessity or extreme expediency. (20 Cal.Jur. 243.)" (*Johnson* v. *Barreiro* (1943) 59 Cal.App.2d 213, 218 [138 P.2d 746], cited with approval in *Simpson* v. *City of Los Angeles* (1953) 40 Cal.2d 271, 280 [253 P.2d 464].) It has been held that "It is incumbent upon one serving notice by mail to show that the case is one in which such notice is permitted and that the mode pointed out by the statute has been followed." (*Harris* v. *Minnesota Investment Co.* (1928) 89 Cal.App. 396, 402 [265 P. 306].) ". . . a party relying upon a service by mail, or otherwise than by actual service on the proper person, must show a strict compliance with the requirements of the statute. (Citations.)" (*People* v. *Alameda Turnpike Co.* (1866) 30 Cal. 182, 184; *Linforth* v. *White* (1900) 129 Cal. 188, 191 [61 P. 910], cf. 66 C.J.S., Notice, § 18; 2 Witkin, Cal. Procedure (2d ed.) Actions, § 577.)

■ Service by registered or certified mail is adequate to give notice. (*Blalock* v. *Ridgway* (1928) 92 Cal.App. 132 [267 P. 713]; *Steele* v. *Board of Trustees* (1932) 121 Cal.App. 419, 420 [9 P.2d 217]; *Reed* v. *Board of Education* (1932) 125 Cal.App. 714 [14 P.2d 330]; *Rapp* v. *Los Angeles City School Dist.* (1935) 5 Cal.App.2d 342, 344 [42 P.2d 1039].)

The record discloses that the court's finding that Hankla wilfully disregarded the notice was not objected to below. Implied is a finding that Hankla knew to what the notice of certified mail referred, that is, a letter from respondent as to the dismissal proceedings. (4 Witkin, Cal. Procedure (2d ed.) Trial, § 339, pp. 3140-3141.) There is substantial

evidence to support the trial court's finding that Hankla wilfully disregarded the notice.[6]

A person may not deny personal service on the grounds of lack of delivery where the delivery was deliberately prevented by the action of the person to be served. (*In re Ball* (1934) 2 Cal.App.2d 578 [38 P.2d 411]; *Crescendo Corp.* v. *Shelted, Inc.* (1968) 267 Cal.App.2d 209 [72 Cal.Rptr. 776].)

The usual rule is that service by mail is effective upon depositing in the mail. (Code Civ. Proc., § 1013.) ▆▆ Here, there was substantial evidence that a certified letter, including the notice of intention to dismiss, had been properly deposited in the mail to Hankla's address. Notice advising Hankla that there was a certified letter for him was given twice to Hankla. A courtesy copy of the letter was mailed to the attorney representing Hankla in the criminal proceedings. Hankla's attorney advised counsel for respondent that Hankla had refused to accept service, that is, of the certified letter. Here, Hankla did not receive the letter itself, however.

There is substantial evidence that actual receipt of the certified letter was frustrated by Hankla's deliberate attempt to avoid service. Due process was satisfied.

Where a statute provides for service by registered or certified mail, the addressee cannot assert failure of service when he wilfully disregards a notice of certified mail delivered to his address under circumstances where it can be reasonably inferred that the addressee was aware of the nature of the correspondence.

[6]The court below found: "The procedure of the U. S. Postal Service in handling certified and registered mail is as follows: On first delivery, if an addressee is absent, a form No. 3849 is left in the addressee's mailbox showing that an attempt to deliver certified (or registered) mail has been made and that it can be picked up by the addressee at the Post Office. After leaving said notice, no further attempt is made by the Post Office to deliver the mailed item at the address shown on the item. However, five days after the first attempt at delivery a duplicate No. 3849 notice is again left in the addressee's mailbox.

"The records of the Post Office show that No. 3849 notices were left in Petitioner's mailbox on May 13 and May 19, 1972. *Petitioner and his wife willfully disregarded said notices.* The envelope containing the papers which had been mailed to Petitioner on May 12, 1972, was not picked up at the Post Office; and, on May 28, 1972, at the expiration of the 15-day period, it was returned to Respondent bearing stamping indicating the leaving of said notices and the unclaimed status of said correspondence.

"Although [Hankla's attorney and his associate] testified they did not receive the courtesy copy of the papers mailed to them on May 12, 1972, the Post Office did not return the same to Respondent." (Italics added.)

It is clear that Hankla was given adequate notice of the intention to dismiss, as required by Education Code section 13405. His failure to request a hearing within 30 days properly resulted in his dismissal.

Judgment is affirmed.

Draper, P. J., and Good, J.*, concurred.

A petition for a rehearing was denied April 30, 1975, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied June 4, 1975.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.