**William Alfred GOLDSWORTHY, petitioner, Appellant,**

v.

**STATE of Minnesota, DEPARTMENT OF PUBLIC SAFETY, Respondent.**

**No. 47979.**

Supreme Court of Minnesota.

May 26, 1978.

Rehearing Denied July 5, 1978.

---

Meshbesher, Singer & Spence, Kenneth Meshbesher and Carol M. Grant, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Joel A. Watne, Spec. Asst. Atty. Gen., St. Paul, for respondent.

Heard before ROGOSHESKE, TODD, and YETKA, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Appeal by petitioner from an order of the Hennepin County District Court denying a petition for reinstatement of his driver's license and for a hearing pursuant to Minn.St. 169.127, subd. 2. Petitioner contends that he did not receive actual notice of the commissioner of public safety's intent to revoke his license pursuant to Minn.St. 169.127, subd. 2, and that the revocation was thus ineffective.

On August 15, 1976, petitioner was arrested for driving while intoxicated, Minn.St. 169.121, and disorderly conduct, Minn.St. 609.72. He was read an implied consent advisory [1] and consented to the taking of a breath test. His blood alcohol reading was .12 percent. He was issued citations and released to a neighbor.

A letter dated December 13, 1976 was sent to petitioner's address in Minnetonka. It was sent by certified mail, and on December 15, 1976, a receipt was signed by June Goldsworthy, petitioner's wife. Ms. Goldsworthy stated in an affidavit that petitioner had been living away from Minnesota, that the notice came during petitioner's absence, and that she never gave the notice to petitioner. Petitioner stated in an affidavit that he never received notice of the state's "intention to proceed under the revocation procedures outlined in Minnesota Statute 169.127, * * *" and further claims that he has a defense to the revocation.

A revocation notice apparently mailed on January 25, 1977 appears in the record. A February 28, 1977, letter from the Department of Public Safety to the Minnetonka police also appears in the district court file. The letter asks that a duplicate revocation order be served on petitioner. On the bottom of the letter it was noted that on March 2, 1977, the order was served but that the petitioner himself was not located. The following notation was also made: "Served on Mrs. Goldsworthy—She states

---

1. Minn.St. 169.123.

her husband is in New York and has license. He also knows he's revoked." On April 11, 1977, petitioner obtained an order to show cause and a temporary restraining order directing reinstatement of his license pending a hearing on the petition. The petition was denied on May 26, 1977.

The issue raised on appeal is: May a driver's license be revoked pursuant to § 169.127, subd. 2, where the notice of intent to revoke is sent by certified mail to the driver's home and signed for by his wife, but where the driver claims the notice was never given to him?

Minn.St. 169.127 provides for revocation of a driver's license whenever the results of the test given pursuant to the implied consent law, § 169.123, indicate that a driver's blood alcohol content is .10 percent or more. Minn.St. 169.127, subd. 2, provides:

"The commissioner of public safety shall revoke for a period of 90 days the driver's license, permit or nonresident operating privileges of any person whose blood contains .10 percent or more by weight of alcohol upon the receipt of a record of the blood, breath or urine test administered by or at the direction of a peace officer pursuant to section 169.123. No revocation shall be made until the commissioner of public safety notifies the person by certified or registered mail of the intention to revoke and allows the person a 20 day period after the date of receiving the notice to request of the commissioner of public safety in writing, a hearing as herein provided. If a request for hearing is filed, no revocation hereunder shall be made until final judicial determination."

The notice of intent to revoke was sent by certified mail and signed for by petitioner's wife. Both claim, by affidavit, that he never received the notice.

Petitioner raises two challenges to the revocation procedures actually used: A constitutional due process claim, and a claim

based upon statutory interpretation. We first discuss the due process claim.

■ 1. Due Process. Deprivation of the continued possession of a driver's license is subject to the due process clause of the Fourteenth Amendment. *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). The due process requirements which are applicable to driver's license suspensions are, however, flexible. In *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977), the United States Supreme Court recognized the state's important interest in road safety and the prompt removal of safety hazards and held that due process did not require a full evidentiary hearing prior to an administrative revocation of a license where a full opportunity for a hearing was later provided.

■ Due process requires only that notice be reasonably calculated to reach interested parties. *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Berkman v. Weckerling*, 247 Minn. 277, 77 N.W.2d 291 (1956). In *Walker Employment Service, Inc. v. Swanson*, 278 Minn. 368, 154 N.W.2d 823 (1967), this court held that substituted service of process on a defendant's wife in a civil action was proper, despite the fact that the defendant had left 6 hours earlier to assume a job in another state. The defendant sought to vacate service of process on the ground that the Minnesota residence was not his "usual place of abode." [2] This court held that the Minnesota home continued to be his usual place of abode because his wife remained in the home to further their mutual interest. We further held that Rule 4.03(a), Rules of Civil Procedure, was sufficient to comply with Federal constitutional requirements. See, also, *Peterson v. W. Davis & Sons*, 216 Minn. 60, 11 N.W.2d 800 (1943), which holds that substituted service on a wife is effective despite the fact that the recipient did not understand the significance of the papers served on her.

2. Rule 4.03(a), Rules of Civil Procedure, provides that service of process may be made as follows: "Upon an individual by delivering a copy to him personally or by leaving a copy at his usual place of abode with some person of suitable age and discretion then residing therein."

In the present case, the statute does not specifically provide for substituted service but instead provides for notification by registered or certified mail. The use of registered or certified mail fills the function of insuring receipt by a person of suitable age or discretion at the person's last known address and is thus reasonably calculated to provide notice to the affected person. There is no issue in the present case, as in many of the cases cited by petitioner, of the notice being returned as undelivered. It is uncontradicted that petitioner's wife received and signed for the notice of intent to revoke.

There does not appear to be any serious contention on the petitioner's part that certified or registered mail is, per se, unconstitutional. He argues instead that it would violate due process to *irrebuttably* presume notice from the fact of registered mailing.[3] No such irrebuttable presumption need be used in the present case. It is uncontroverted that June Goldsworthy *received* the notice. The signing of the receipt by June Goldsworthy raised a presumption that petitioner received actual notice of the state's intent to revoke his license. Cf. *Nemo v. Local Joint Executive Board*, 227 Minn. 263, 35 N.W.2d 337 (1948). The district court's order denying the petition is, in effect, a finding that the affidavits were insufficient to overcome the presumption raised by her receipt.

Petitioner's contention that criminal due process standards apply in the present case is mistaken. The present case involves only the civil penalty of driver's license revocation. The primary thrust of the implied consent law is remedial and intended to protect public safety on the highway. Once the driver has made an informed decision to take a test under the implied consent law the proceedings under § 169.127 are clearly not criminal in nature.[4]

2. Statutory Construction. We hold that in this type of case substituted service by the use of certified or registered mail complies with the statute. Petitioner apparently contends that the only function of the statutory provision for registered or certified mail is to relieve the state of any obligation for personal service and that no presumptions of notice can arise. We cannot agree with this contention. The statute requires that the state " * * * notif[y] the person by certified or registered mail * * * ." Petitioner's argument focuses on the notification requirement and ignores the certified or registered mail requirement. One case cited by petitioner, *State v. Simmons*, 85 Ohio L.Abs. 1, 172 N.E.2d 194 (Mun. Ct. 1960), in fact, held that the term "notify" in a similar statute included constructive notice.

When the notice was properly served and no hearing was requested within 20 days, the state properly revoked petitioner's license. The service by certified mail raised a presumption of actual notice. Petitioner was then left with one additional remedy.

3. Petition for Reinstatement. Petitioner was still entitled to request a hearing under Minn.St. 171.19, which he did.[5] Any defenses that he might have to either the proper notice or to the charge as a ground for the revocation itself could be brought forth in the hearing in district court. That statute makes it clear, however, that the driver must be present and make himself available for cross-examination. Petitioner chose to present his evidence solely by affidavit. Although the affidavits denied that the specific notice of proposed revocation mailed by the state reached petitioner, there was evidence before the district court that petitioner had

---

**3.** Petitioner's claims based upon the right to travel and on equal protection are without merit.

**4.** *Prideaux v. State, Dept. of Public Safety*, 310 Minn. 405, 247 N.W.2d 385 (1976), decided after petitioner's arrest, held that a driver had a limited right to counsel for the purposes of the

implied consent law. This holding in no way turns a proceeding under § 169.127, subd. 2, into a "quasi-criminal" proceeding.

**5.** Apparently petitioner did not avail himself of the appeal procedure set forth in § 169.127, subd. 4.

actual notice of the revocation itself. The failure of petitioner to appear at the hearing prevented the district court from resolving the ambiguities in the record. The petition for reinstatement of the license was thus correctly denied.

Affirmed.