Arthur James McINTEE, Petitioner, Appellant,

v.

STATE of Minnesota, DEPARTMENT OF PUBLIC SAFETY, Respondent.

No. 49087.

Supreme Court of Minnesota.

May 11, 1979.

---

David K. Hackley, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., and Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard before ROGOSHESKE, TODD, and YETKA, JJ., and considered and decided by the court en banc.

TODD, Justice.

Arthur James McIntee refused to submit to a preliminary screening test for blood alcohol content and also subsequent tests at a hospital. Thereafter, revocation proceedings were initiated to revoke his driver's license. Notice of the proposed revocation was sent by certified mail which was not picked up by McIntee. Notice of revocation was thereafter sent by regular mail which was received by McIntee. He then commenced proceedings to challenge the revocation. The trial court dismissed his challenge on the grounds that the specific provisions for a revocation hearing under Minn.St. 169.123 took precedence over the general provisions for hearing under Minn.St. 171.19. We reverse and remand.

The facts are not in dispute. Shortly after midnight on September 28, 1977, McIntee and a friend were driving their motorcycles in a northerly direction on Highway No. 101 near Chanhassen, Minnesota. McIntee rounded a corner and saw that his friend had been thrown from his motorcycle and was injured. McIntee parked his motorcycle off the road, shut it off, flagged down a passing motorist to summon help, and stayed with his friend until the police and an ambulance arrived. McIntee had no involvement in the occurrence of the accident.

The police officer at the scene asked McIntee for information about the accident. The officer observed that McIntee swayed, had dilated pupils, slurred speech, and a strong odor of alcohol about him. The officer assumed he had been driving his motorcycle while under the influence of alcohol and requested that McIntee submit to a preliminary screening test. McIntee refus-

ed, and the officer read to him a standard implied consent advisory form. McIntee again refused to submit to any test. The officer certified the test refusal to the Department of Public Safety.

On October 26, 1977, pursuant to statute, a notice of proposed revocation was sent to McIntee by certified mail. This notice advised McIntee of his right to request a hearing within 20 days. The notice was addressed to 3608 Therese Street, Deephaven, Minnesota. This is the address of the house in which McIntee had resided for the past 5 years and is the address listed on his driver's license. However, the United States Post Office does not deliver mail to this address but rather deposits mail in a post office box at the Wayzata post office. The post office box number is not listed on the driver's license since the state will not issue a driver's license to a post office box address. Consequently, the post office was unable to make personal delivery of the certified mail upon any individual and obtain a signed receipt. Under standard post office practice, a notice of receipt of certified mail with request to pick up the same was left in the post office box. McIntee never responded to this notice. On November 17, the postal service returned the certified mail to the Department of Public Safety as "unclaimed."

McIntee's driver's license was revoked and the department on December 27, 1977, mailed a revocation order to him by regular first-class mail, which McIntee acknowledged receiving on January 11, 1978. This notice makes no mention of a right to hearing. McIntee sought reinstatement of his license by proceedings in district court. The proceedings were dismissed upon the grounds that the specific proceeding under the implied consent law, Minn.St. 169.123, subds. 5, 6, was the exclusive remedy available and therefore the general provisions of § 171.19 for review of license revocations were not available to McIntee.

The issues are:

(1) Did the trial court err in concluding that McIntee received sufficient notice of a proposed revocation under § 169.123?

(2) Does § 169.123 provide the exclusive remedy for judicial review of license revocation proceedings under the implied consent law?

■ 1. Under the Minnesota implied consent statute, § 169.123, the commissioner of public safety cannot revoke a driver's license for refusal to submit to testing unless the driver is given a notice and opportunity for hearing. In 1977, § 169.123, subd. 5, provided:[1]

"No revocation under subdivision 4 shall be made until the commissioner of public safety notifies the person by certified or registered mail of the intention to revoke and allows said person a 20 day period after the date of *receiving* said notice to request of the commissioner of public safety, in writing, a hearing as herein provided. If no request is filed within the 20 day period the commissioner of public safety may then issue an order of revocation. However if a request for hearing is filed, no revocation hereunder shall be made until judicial determination resulting in an adverse decision to said person." (Italics supplied.)

McIntee alleges that he never "received" the notice because he never picked up the certified mail containing the notice. The state argues that McIntee was adequately notified and should be charged with receipt of notice because the post office delivered a notice indicating that McIntee had certified mail waiting for him. The trial court held that McIntee received adequate notice under the statute. We agree.

There are no Minnesota cases directly on point. However, the case of *Goldsworthy v. State Dept. of Pub. Safety,* 268 N.W.2d 46 (Minn.1978), is somewhat relevant to a resolution of the issue. In that case, the state had sent a notice of proposed revocation by certified mail, and the driver's wife signed for the mail. This court held the notice was sufficient, stating (268 N.W.2d 49):

"In the present case, the statute does not specifically provide for substituted service but instead provides for notifica-

1. This statute was amended by L.1978, c. 727, § 3.

tion by registered or certified mail. The use of registered or certified mail fills the function of insuring receipt by a person of suitable age or discretion at the person's last known address and is thus reasonably calculated to provide notice to the affected person. There is no issue in the present case, as in many of the cases cited by petitioner, of the notice being returned as undelivered. It is uncontradicted that petitioner's wife received and signed for the notice of intent to revoke." The *Goldsworthy* case did not, therefore, involve an undelivered notice, but the case does indicate that constructive receipt of certified mail is sufficient notice.

Cases from other jurisdictions are also instructive on the issue of whether McIntee received sufficient notice of the proposed revocation. In cases where the registered mail was not delivered and it was returned, the courts have been virtually unanimous in holding that the notice is insufficient. See, *Simmons v. State,* 443 S.W.2d 852 (Tex.Cr. App.1969); *Fell v. Bureau of Motor Vehicles,* 30 Ohio App.2d 151, 283 N.E.2d 825 (1972), certiorari denied, 419 U.S. 1010, 95 S.Ct. 330, 42 L.Ed.2d 285 (1974). See, also, *Hall v. Oregon State Department of Motor Vehicles,* 2 Or.App. 248, 467 P.2d 975 (1970).

However, in the analogous cases of undelivered service of process, courts have held that it is sufficient service if delivery was attempted but it was refused. For example, in *Hankla v. Governing Board of Roseland Sch. Dist.,* 46 Cal.App.3d 644, 120 Cal. Rptr. 827 (1975), a school district sent a teacher a notice of intent to dismiss unless the teacher demanded a hearing within 30 days. The notice was sent by certified mail, but the teacher was not at home and therefore the postal service left a note indicating that certified mail could be picked up. The teacher did not claim the mail, and it was returned. The court held the notice was sufficient because the teacher had willfully disregarded the postal service notes to pick up the mail, stating (46 Cal.App.3d 655, 120 Cal.Rptr. 834):

"A person may not deny personal service on the grounds of lack of delivery where the delivery was deliberately prevented by the action of the person to be served. * * *

* * * * * * *

"Where a statute provides for service by registered or certified mail, the addressee cannot assert failure of service when he wilfully disregards a notice of certified mail delivered to his address under circumstances where it can be reasonably inferred that the addressee was aware of the nature of the correspondence."

Accord, *Merriott v. Whitsell,* 251 Ark. 1031, 476 S.W.2d 230 (1972); *Thomas Organ Co. v. Universal Music Co.* 261 So.2d 323, 327 (La.App.1972).

In accordance with these cases, the service of notice upon McIntee is sufficient if he, in essence, refused the certified mail, but it is insufficient if the certified mail was merely undelivered. The trial court in its memorandum stated that McIntee's failure to pick up the certified mail was negligence at best and outright avoidance of the revocation proceedings at worst.

We hold that the trial court did not err in concluding that sufficient notice of a proposed revocation was afforded to McIntee under § 169.123, subd. 5. This case does not involve an undelivered notice. Rather, the facts disclose constructive delivery to McIntee and his refusal or neglect to pick up the properly delivered notice.

2. Section 171.19 allows a person to petition for reinstatement of his driver's license. The section provides in part:

"Any person whose driver's license has been refused, revoked, suspended, or canceled by the commissioner may file a petition for a hearing in the matter in the district court in the county wherein such person shall reside and, in the case of a non-resident, in the district court in any county, and such court is hereby vested with jurisdiction, and it shall be its duty to set the matter for hearing upon 15 days' written notice to the commissioner, and thereupon to take testimony and examine into the facts of the case to determine whether the petitioner is entitled to

a license or is subject to revocation, suspension, cancelation, or refusal of license, under the provisions of this chapter, and shall render judgment accordingly. * * "

The district court concluded that this provision for hearing did not apply because McIntee's exclusive opportunity for a revocation hearing was under § 169.123, and he had not requested a hearing under § 169.123 within 20 days as required by the statute. The court reasoned that the hearing provisions in § 169.123 conflicted with those in § 171.19, and that § 169.123 controlled because it was a specific statute, whereas § 171.19 is a general statute.

McIntee argues that he is entitled to a full reinstatement hearing on the merits under § 171.19, even though he may have waived his right to a proposed revocation hearing under § 169.123. The state argues that under § 171.19 McIntee is entitled to attack only the revocation procedure, not the underlying merits of revocation.

Although both §§ 169.123 and 171.19 provide for a hearing, they do not conflict because § 169.123 provides for a prerevocation hearing, whereas § 117.19 provides for a post-revocation reinstatement hearing. It seems clear from the statutes that a person is entitled to both hearings, although as a practical matter the issues raised in a reinstatement hearing might well have been previously decided in a prerevocation hearing. The difference in the two hearings is that the state has the burden of going forward in a § 169.123 proceeding, whereas in a § 171.19 proceeding, the petitioner's license has been revoked and therefore he has the burden of showing error to entitle reinstatement.

This court has never discussed in detail the precise interrelationship between the § 169.123 hearing and the § 171.19 hearing. However, the clear implication from *Goldsworthy v. State Dept. of Pub. Safety, supra,* is that a person is entitled to a full hearing on the merits under § 171.19, even though he did not request or obtain a hearing prior to revocation. The trial court's order in this case denying a hearing under § 171.19 was entered just 3 days prior to our decision in *Goldsworthy.* We must review this case in light of that decision.

In *Goldsworthy,* the petitioner had failed a blood alcohol test and had been sent a notice of proposed revocation. Petitioner did not request a prerevocation hearing under Minn.St. § 169.127, which is similar to the prerevocation hearing under the implied consent statute § 169.123. This court said (268 N.W.2d 49):

" * * * Petitioner was still entitled to request a hearing under Minn.St. 171.- 19, which he did. Any defenses that he might have to either the proper notice or the charge as a ground for the revocation itself could be brought forth in the hearing in district court."

The case of *LeClaire v. Hoaglund,* 296 Minn. 85, 208 N.W.2d 90 (1973), also indicates that a person is entitled to petition for a full reinstatement hearing on the merits even though the person had his license revoked for a DWI-related offense. See, also, *State v. Cook,* 275 Minn. 571, 148 N.W.2d 368 (1967), where this court stated that a revocation under Minn.St. c. 170 could be challenged in a reinstatement hearing under § 171.19.

We hold that McIntee was entitled to challenge the revocation of his license under § 171.19 and may challenge the merits as well as the procedure of revocation. However, pending a determination under the § 171.19 proceeding, McIntee's license remains revoked. This is in contrast to proceedings under § 169.123, wherein the license remains effective until grounds for revocation are shown by the state. Since the trial court did not pass on the merits of McIntee's challenge, we will not review these matters in this appeal. Having disposed of the case, we need not consider other issues raised by the parties.

Affirmed in part; reversed in part; and remanded.