333 N.W.2d 619 (1983)
David Lewis WILLEMS, Respondent,
v.
COMMISSIONER OF PUBLIC SAFETY, Appellant.
No. C0-82-553.
Supreme Court of Minnesota.
April 29, 1983.
Hubert H. Humphrey, III, Atty. Gen., Norman B. Coleman, Jr., and Joel A. Watne, Sp. Asst. Attys. Gen., St. Paul, for appellant.
Hardwick & Mergens and Brian T. Hardwick, Roseau, for respondent.
Considered and decided by the court en banc without oral argument.
YETKA, Justice.
Respondent David Lewis Willems filed a petition for a hearing to reinstate his driver's license under Minn.Stat. § 171.19 (1980) after his license had been revoked pursuant to Minn.Stat. § 169.123 (1982), the Implied Consent Statute. Willems appeared in person at the hearing while appellant Commissioner of Public Safety appeared by affidavit, as provided by Minn.Stat. § 171.19 (1982).
The commissioner argued that the court had no authority to hear the dispute de novo. Willems disagreed and maintained that the evidence against him had been illegally obtained and should therefore be suppressed. The Lake of the Woods County District Court, relying on McIntee v. State, Department of Public Safety, 279 N.W.2d *620 817 (Minn.1979), found that Willems was entitled to a de novo hearing under Minn. Stat. § 171.19 (1980). The court also found that Willems' automobile had been stopped in violation of his constitutional rights. The court then excluded the results of Willems' blood test and reinstated his license. The commissioner appealed. We reverse.
On May 4, 1980, at or about 1:00 a.m., Willems left a dance at the Williams Hotel in Williams, Minnesota. He encountered Minnesota Highway Patrol troopers somewhere west of the hotel on Highway 11. There are two somewhat different, but not contradictory, versions of what occurred.
According to the Alcoholic Influence Report Form, Willems was stopped after his car was observed "weaving" on the road. This was the conclusion adopted by the county court in its December 16, 1981, decision sustaining the revocation of Willems' license. In the subsequent proceeding in district court, the evidence indicated that all westbound traffic was being stopped as part of an ostensible license check. The district court found, however, that "the stops made including that of petitioner were a rather obvious attempt to check on the sobriety of drivers and even passengers as they left a party under the guise of a license check."
Once Willems was stopped, officers observed that his breath had an alcoholic odor, his eyes were red, and his speech was somewhat slurred. Willems voluntarily took and failed the preliminary breath test. He was then arrested and eventually administered a blood test establishing an alcohol level of 0.12. Willems' license was subsequently revoked.
Willems unsuccessfully contested the license revocation in county court pursuant to Minn.Stat. § 169.123 (1982). The court decided that Willems' "weaving" on the highway constituted sufficient probable cause for a legal stop. Willems had also raised the issue of an illegal stop in the form of a random license check. The court noted that a random check would be improper, but found that the facts did not support the proposition.
Although Willems could have appealed the county court decision to the district court, Minn.Stat. § 169.123, subd. 7 (1982), he declined to do so. Instead, he filed a petition under Minn.Stat. § 171.19 (1980) in order to present testimony with respect to the underlying merits.
The issues raised on appeal are:
1. Was respondent entitled to a new trial on the merits under Minn.Stat. § 171.19 (1980) when he had already exercised his right to a trial under Minn.Stat. § 169.123 (1982)?
2. Does the county court's finding of probable cause to stop respondent's car collaterally estop relitigation of the same issue in the later district court proceeding?
3. Was the initial stop of respondent's car illegal?
4. Assuming that the initial stop was illegal, was it proper to exclude the evidence obtained thereby in a civil proceeding?
1. Minn.Stat. § 171.19 (1980) provided in pertinent part:
Any person whose driver's license has been refused, revoked, suspended, or canceled by the commissioner may file a petition for a hearing in the matter in the district court in the county wherein such person shall reside * * * and it shall be its duty, to set the matter for hearing upon 15 days' written notice to the commissioner, and thereupon to take testimony and examine into the facts of the case to determine whether the petitioner is entitled to a license or is subject to revocation, suspension, cancellation, or refusal of license, under the terms of this chapter, and shall render judgment accordingly.
Relying on this provision, Willems sought reinstatement of his license. The commissioner contended that Willems was only entitled to one hearing on the merits of his license revocation and that he had already received that hearing in county court under the Implied Consent Statute.
*621 The district court, relying on McIntee v. State, Department of Public Safety, 279 N.W.2d 817 (Minn.1979), decided that Willems was entitled to a second trial on the merits. In McIntee, a driver sought reinstatement of his license under Minn.Stat. § 171.19 (1980), even though he had waived his prerevocation hearing under the Implied Consent Statute. We held that the driver was entitled to challenge the revocation.
Although both §§ 169.123 and 171.19 provide for a hearing, they do not conflict because § 169.123 provides for a prerevocation hearing, whereas § [171.19] provides for a post-revocation reinstatement hearing. It seems clear from the statutes that a person is entitled to both hearings, although as a practical matter the issues raised in a reinstatement hearing might well have been previously decided in a prerevocation hearing. The difference in the two hearings is that the state has the burden of going forward in a § 169.123 proceeding, whereas in a § 171.19 proceeding, the petitioner's license has been revoked and therefore he has the burden of showing error to entitle reinstatement.
279 N.W.2d at 821; accord Winchester v. Commissioner of Public Safety, 306 N.W.2d 899 (Minn.1981).
As the commissioner notes, McIntee and Winchester were both cases in which the driver had foregone his right to a hearing under the Implied Consent Statute. As a result, the commissioner argues that they are clearly distinguishable from this case. It is also argued that the Implied Consent Statute is a remedial statute and, as such, should be "liberally interpreted in favor of the public interest and against the private interests of the drivers involved." State, Department of Public Safety v. Juncewski, 308 N.W.2d 316, 319 (Minn.1981). This reflects a more general principle of statutory interpretation: "The legislature intends to favor the public interest as against any private interest." Minn.Stat. § 645.17(5) (1982). The commissioner argues that allowing a post-revocation hearing after a hearing under Minn.Stat. § 169.123 (1982) would frustrate the purposes of the Implied Consent Statute. Consequently, a hearing under Minn.Stat. § 171.19 (1980) should not be permitted under the circumstances here.
The commissioner's position has merit. Moreover, since section 171.19 was amended in 1982 to exclude cases where "the license is revoked under section 169.123," Act of Mar. 19, 1982, ch. 423, § 11, 1982 Minn.Laws 288, 299 (codified at Minn. Stat. § 171.19 (1982)), the amendment appears to reflect a legislative intention to foreclose situations like the one here. Thus, the holdings in McIntee and Winchester have now been mooted as to cases in which there has been a prior hearing under the Implied Consent Statute. In those cases initiated before the 1982 amendment, there is a right to a section 171.19 proceeding. As the next section indicates, however, this is a right with little practical value in light of the principle of collateral estoppel.
2. In Willems' action under the Implied Consent Statute, the county court found that "the erotic [sic] driving of the Petitioner's vehicle, coupled with the known party at the William's Hotel Bar from where the petitioner apparently came, provides sufficient reason for the stop." The court also considered and rejected Willems' argument that he was stopped as part of an illegal "random license check." The commissioner maintains that these findings estop the district court from reaching a contrary conclusion.
The application of collateral estoppel is appropriate where:
(1) the issue was identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue.
Victory Highway Village, Inc. v. Weaver, 480 F.Supp. 71, 74 (D.Minn.1979). See Staples v. Zinn, 302 Minn. 149, 152, 223 N.W.2d 415, 417 (1974); Schwalich v. Guenther, 282 Minn. 504, 506, 166 N.W.2d 74, 77 (1969). *622 Ellis v. Minneapolis Commission on Civil Rights, 319 N.W.2d 702, 704 (Minn.1982). All of these conditions were met in the present case. The finding that there was probable cause to stop Willems collaterally estopped a contrary ruling in the subsequent district court proceeding.
Since we have determined that failure to appeal from the section 169.123 proceedings barred the findings of the district court in the section 171.19 proceeding, we need not decide the other issues raised on this appeal.
The district court is reversed and the revocation order of the county court is reinstated.