**Bret Stephen GARDNER, Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. C9–87–2272.**

Court of Appeals of Minnesota.

May 17, 1988.

Stephen R. O'Brien, Minneapolis, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by FOLEY, P.J., and RANDALL and KALITOWSKI, JJ.

## OPINION

RANDALL, Judge.

Appellant, who had three prior DWI and implied consent violations, obtained a driver's license on the condition that he abstain from alcohol. When the Commissioner of Public Safety received a letter stating that appellant had been found intoxicated, he cancelled appellant's driving privileges. Appellant petitioned for reinstatement and presented evidence that he had not been drinking. The trial court denied relief and dismissed the petition. Appellant brings an appeal. We reverse and remand.

## FACTS

Appellant's driving privileges were revoked pursuant to the DWI and implied consent laws for a series of violations committed on September 17, 1981, January 3, 1983, and February 10, 1985. All driving privileges were also indefinitely "denied" as "inimical to public safety" pursuant to Minn.Stat. § 171.04(8), until such time as appellant could demonstrate his rehabilitation in accordance with the standards set by the Commissioner of Public Safety. The Commissioner reinstated his driving privileges on November 17, 1986, with the condition that appellant abstain from alcohol, and issued him a "B card" with his driver's license which showed the restriction.

On April 11, 1987, at approximately 2:30 a.m., Officer J. Waydula investigated a "loud party" in an apartment, where he encountered appellant. In a letter dated April 11, 1987, Officer Waydula reported the incident to the Commissioner because he noticed the restriction on appellant's driver's license. In the letter he advised the Commissioner that appellant was holding a drink which he described to the officer as a "White Russian" mixed drink; that he "seemed quite intoxicated at the time"; that appellant was arrested shortly thereafter for obstruction of legal process; and that, while being transported to the jail, Waydula claimed that appellant admitted drinking, was argumentative and verbally

abusive, made threats to the officer and others, and denied having a problem with alcohol.

Upon receipt of the letter, the Commissioner determined it constituted "sufficient cause to believe" appellant had used alcohol in violation of the terms of reinstatement. He issued an order cancelling and denying indefinitely appellant's driving privileges, effective April 22, 1987.

The appellant petitioned for reinstatement pursuant to Minn.Stat. § 171.19 (1986). He denied drinking any alcohol the night in question or any time since completing rehabilitation, and stated he had numerous witnesses who would testify he did not consume any alcohol that night.

A hearing was held on the petition, and appellant presented testimony. Kristi McAdam, the tenant of the apartment, testified that she had invited a friend, Colleen O'Donnell, over to celebrate because she was moving out of her apartment and finishing a quarter at school. They had White Russian drinks, turned on the radio, and visited. Appellant, whom McAdam was dating, came over later. Approximately three-quarters to an hour after appellant arrived, the police knocked on the door and told them to turn the radio down. Five to ten minutes later, the police came back. McAdam, who had locked the door with a chain, opened the door as far as she could, and then shut the door and went to get a key to unlock the chain. The police kicked the door open, grabbed appellant, and slammed him into the wall. McAdam and O'Donnell both testified that appellant did not look drunk or smell of alcohol, and they did not see him drink any alcohol that night.

Hazel Sommerfeld, who lived across the hall from McAdam, had been watching television when she heard the officer kick the door in. She went to the door to investigate, and saw the officer shove appellant against the wall. She did not smell any alcohol in the hallway or coming from appellant. Appellant did not appear to be under the influence, and he had previously told her that he had stopped drinking.

Appellant testified that after his driving privileges were revoked on February 10, 1985, he received in-patient and out-patient treatment, and attends Alcoholics Anonymous. Appellant stated the last time he drank was at least three years ago. His normal work hours are 5:30 p.m. to 1:30 a.m. He left work at 1:30 a.m. on April 11, 1987, and arrived at McAdam's apartment at approximately 2:00 a.m. He claimed he had nothing to drink prior to his arrest.

The Commissioner advised the trial court that Officer Waydula, who sent the letter to the Commissioner, no longer worked for the police department and his whereabouts were unknown. The other officer who had been present was apparently on vacation. The Commissioner presented no testimony, and relied upon his return to the petition, which included the letter from the police officer and a police report on the incident.

The trial court believed that it was limited to reviewing just the "facts" which the Commissioner had before him at the time of the denial, and that it was precluded from considering the evidence and sworn testimony which appellant presented at the hearing.

## ISSUES

1. Was the trial court authorized to make findings on the contested issue of fact based upon evidence presented by appellant at the hearing?

2. Did the trial court properly consider the police officer's letter and report in making its findings of fact?

## ANALYSIS

### I.

*Determination of fact disputes*

The Commissioner has the authority to cancel and deny a driver's license when there is sufficient cause to believe the driver has consumed alcohol after completing rehabilitation. Minn.R. 7503.1300, subpt. 3; 7503.1700, subpt. 6 (1987). The first issue is whether a trial court can make factual findings on the disputed issue of whether appellant was intoxicated, based on evi-

dence presented at a hearing. The Commissioner argues the court may not hold a *de novo* hearing. Appellant argues that the court can make this determination, and can overrule the Commissioner on certain limited grounds. The trial court, believing it was limited to reviewing the "evidence" before the Commissioner at the time the denial was made, dismissed the petition and denied the relief requested.

■ In proceedings under Minn.Stat. § 171.19 (1986), the petitioner has the burden of proving he is entitled to reinstatement. *McIntee v. State, Department of Public Safety*, 279 N.W.2d 817, 821 (Minn. 1979). The decision whether to cancel or deny driving privileges rests with the Commissioner of Public Safety, and there is a presumption of regularity and correctness of these administrative acts. Minn.Stat. § 171.25 (1986); *Antl v. State, Department of Public Safety*, 353 N.W.2d 240, 242 (Minn.Ct.App.1984). The decision of the agency will not be reversed unless the decision is fraudulent, arbitrary, unreasonable, or not within the agency's jurisdiction or powers. *Id.*

The statute provides that:

Any person whose driver's license has been refused, revoked, suspended, or canceled by the commissioner * * * may file a petition for a hearing in the matter * * *, and such court is hereby vested with jurisdiction, and it shall be its duty, * * * thereupon *to take testimony and examine into the facts of the case* to determine whether the petitioner is entitled to a license or is subject to revocation, suspension, cancellation, or refusal of license, under the provisions of this chapter, and shall render judgment accordingly.

Minn.Stat. § 171.19 (1986) (emphasis added); *Askildson v. Commissioner of Public Safety*, 403 N.W.2d 674, 678 (Minn.Ct.App. 1987), *pet. for rev. denied* (Minn. May 28, 1987).

The supreme court has indicated that the district court can make determinations on factual ambiguities, and that additional evidence can be taken at the hearing. In *Goldsworthy v. State, Department of Pub-*

*lic Safety*, 268 N.W.2d 46 (Minn.1978), the issue was raised as to whether the petitioner was given proper notice of revocation. The petitioner chose to appear solely by affidavit, in which he denied specific notice of the proposed revocation, although there was evidence of actual notice. The supreme court held that where the statute makes it clear that the driver must be present and make himself available for cross-examination, the failure of the petitioner to appear at the hearing prevented the district court from resolving ambiguities in the record, and the petition for reinstatement was properly denied. *Id.* at 49–50. In *Antl*, this court also recognized that additional evidence disclosed at the hearing may be used to justify revocation of a license, and that the district court is not limited to the record presented to the Commissioner. *Antl*, 353 N.W.2d at 243.

■ The Commissioner argues that reviewing courts are not to act as surrogate driver license administrators, following whatever standards they see fit to adopt, and that the courts are only to review the Commissioner's determination. We disagree with the Commissioner's strict and narrow interpretation. The Commissioner's position, taken to its logical extreme, would mean that, whenever the Commissioner determined that the report before him was "credible," judicial review would be precluded. Although a trial court conducts only a limited review of the Commissioner's decision, it does have the authority to conduct a review. Minn.Stat. § 171.19 specifically authorizes the court to take evidence and make findings of fact. Here, the trial court is entitled to review whether the decision of the Commissioner was arbitrary or unreasonable (fraud or lack of jurisdiction are not an issue), taking into account the facts which it finds upon the basis of the evidence and sworn testimony. *Antl*, 353 N.W.2d at 243.

## II.

### Public records

■ Minn.Stat. § 171.19 authorizes presentation of evidence by affidavit or live

testimony. Appellant argues that the record does not support the trial court's finding that he was intoxicated, because the Commissioner did not present an affidavit or testimony from the police officer but instead relied on the officer's letter and police report. The Commissioner argues that he complied with this requirement because he presented the letter and report with an affidavit from the Department of Public Safety certifying that exhibits attached to the return were true and correct copies of originals of the documents in the Commissioner's files.

The Commissioner may present copies of departmental records, rather than the originals, if they are certified as true copies. Minn.Stat. § 171.21 (1986). Evidence may be presented by affidavit at the hearing. Minn.Stat. § 171.19 (1986). The question then becomes whether the records in question were admissible when accompanied by an affidavit from the Department of Public Safety. *State v. Brown*, 303 Minn. 114, 115, 226 N.W.2d 747, 748 (1975). The trial court considered this evidence under the public records exception to the hearsay rule. Minn.R.Evid. 803(8). That exception provides, in relevant part, for the admission of statements of public agencies that set forth "factual findings resulting from an investigation made pursuant to authority granted by law," unless a lack of trustworthiness is indicated. Minn.R.Evid. 803(8)(c); *Norwest Bank Midland v. Shinnick*, 402 N.W.2d 818, 824 (Minn.Ct.App.1987). We find that the trial court's decision to consider the report and letter pursuant to Minn. R.Evid. 803(8) was within its discretion.

## DECISION

The order of the trial court is reversed, and the matter is remanded to the trial court with instructions that the trial court is entitled to consider appellant's evidence, and to consider the disputed fact issues based on the weight and credibility it assesses to the evidence.

Reversed and remanded.