Rickey V. and Pamela J. MATTSON, Respondents,

v.

ROCHESTER SILO, INC., Appellant.

No. C6–86–792.

Court of Appeals of Minnesota.

Dec. 23, 1986.

Review Granted March 13, 1987.

William P. Luther, Luther, Ballenthin & Carruthers, Minneapolis, for respondents.

Victor Kreuziger, Elizabeth A. Holden, Bruce D. Elliott, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for appellant.

Heard, considered and decided by HUSPENI, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

HUSPENI, Judge.

Respondents Rickey and Pamela Mattson brought this action, seeking to recover for damage to their farming operation resulting from the purchase of a silo from appellant Rochester Silo (Rochester). The jury returned a special verdict in favor of the Mattsons on breach of warranty and negligence claims. Rochester moved for a judgment notwithstanding the verdict, but the trial court found that notice of the motion had not been served within the statutory time limit and therefore the motion could not be heard. On appeal, Rochester argues

that the trial court erred in determining that the motion was not timely and in submitting the issue of damages to the jury because the contract expressly excludes damages. Rochester also argues that the evidence does not support an award of incidental damages and that the evidence is insufficient to support the verdict. The Mattsons have filed a notice of review and argue that the trial court abused its discretion in denying their motion for attorney's fees. We affirm in part, reverse in part and remand.

## FACTS

The parties entered into a contract for the purchase of a concrete silo on December 20, 1978. The contract did not provide for the application of plastrete, a sealing material, to the inside of the silo. The silo was constructed on the Mattsons' farm in 1979, and silage was first placed in it during the summer of 1979. Crops from the same or nearby fields were also placed in a smaller silo located on the farm. Harvesting techniques were those used by other farmers who had been farming in the area for many years, and included field checks to roughly estimate the moisture content of the forage being placed in the silos.

Silage stored in the smaller silo was used first, and no unusual spoilage was noted. When silage was removed from the larger silo, there was extensive spoilage near the walls and extending in as far as three feet. The Mattsons contacted representatives of Rochester, who took samples of the silage but did not forward results of any tests to them. Although much of the silage was discarded, a portion was fed to livestock on the farm.

The Mattsons placed silage in both silos during the following summer. Silage in the smaller silo was removed without unusual spoilage, but extensive spoilage was again found in the large silo. Representatives from Rochester again took samples, but did not forward test results to the Mattsons. Although some of the silage from the large silo was fed to livestock, a substantial portion was discarded.

Prior to the 1981 season, Rochester coated the inside of the silo with plastrete. The Mattsons were not charged for this work and received an invoice indicating it was warranty work. Rochester states that the plastrete was installed as a customer relations effort, not as an indication of fault. Silage was subsequently stored in the silo without unusual spoilage. The Mattsons contend that there were holes in the silo, allowing rain to enter and cause spoilage, and that the plastrete sealed the holes.

As the result of the loss of forage crops and decreases in milk production resulting from feeding the silage to their cows, the Mattsons claim they suffered such financial losses that they were forced to sell their farm. They commenced this action, alleging breach of warranty, negligence and fraud and seeking damages for loss of feed, removal of silage, forced sale of the farm, lost investments and lost profits.

At trial, the jury returned a verdict finding in favor of the Mattsons on both the breach of warranty and negligence actions. The jury also found the Mattsons 30 percent negligent. Damages of $72,000 were apportioned between incidental and consequential damages. The consequential damages were reduced by the trial court in proportion to the Mattsons' negligence.

On Friday, February 14, 1986, the Mattsons served notice by mail of the filing of the trial court's findings, conclusions of law and order for judgment. Rochester served notice of a post-trial motion for judgment notwithstanding the verdict or new trial on Wednesday, March 5, 1986. The motion for new trial was withdrawn, and the trial court concluded that the motion for judgment notwithstanding the verdict was not timely. It also denied the Mattsons' motion for attorney's fees.

## ISSUES

1. Did the trial court err in concluding that the motion for judgment notwithstanding the verdict was not timely?

2. Did the trial court err in submitting the issue of damages to the jury in view of

contract language excluding such damages and limiting warranties?

3. Does the evidence support the award of incidental damages?

4. Is the evidence sufficient to support the verdict?

5. Did the trial court abuse its discretion in denying respondents' motion for attorney's fees?

## ANALYSIS

### I.

■ Minn.R.Civ.P. 59.03 provides that a notice of a post-trial motion shall be served within 15 days after service of notice by the opposing party of the filing of the decision or order. The Mattsons served notice of the filing of the order by mail, and according to Minn.R.Civ.P. 6.05,

> Whenever a party has the right or is required to do some act or take some proceeding within a prescribed period after the service of a notice * * * and the notice or paper is served by mail, three days shall be added to the prescribed period.

Rochester contends that this provision creates a separate three day period to be calculated before the 15 day period allowed for service of notice of the post-trial motion. The Mattsons mailed notice of the order on Friday, February 14, 1986. If there were an independent three-day period under Rule 6.05, it would have ended on Monday, February 17, which was a legal holiday. Rochester would extend the period to Tuesday, February 18, under Minn.R. Civ.P. 6.01 which provides:

> In computing any period of time prescribed or allowed by these rules, * * * the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday.

According to Rochester's calculations, the 15 day period provided by Rule 59.03 would begin to run on Wednesday, February 19, and would extend to Wednesday, March 5, the day it served notice of a post-trial motion.

We recognize that the interpretation of Rule 59.03 urged by Rochester is similar to the method of calculation used in the federal court system. There the expiration date for a period such as the fifteen days allowed for serving notice of a post-trial motion is calculated first, with allowance made for holidays and weekends, and then the three day mail extension is added. *Kessler Institute for Rehabilitation v. NLRB*, 669 F.2d 138, 141 (3rd Cir.1982).

However, this state's supreme court has rejected an attempt to calculate the period for service of notice first and then add a separate period for mailing. *In re Iofredo's Estate*, 241 Minn. 335, 338, 63 N.W.2d 19, 21 (1954). Instead, three days are added to the period allowed for service of notice. *See Flame Bar, Inc. v. City of Minneapolis*, 295 N.W.2d 586, 587 (Minn. 1980) (proceedings for review of decision must be instituted within 33 days of notice of service by mail of the decision; period is 33 days as the result of Rule 6.05). We see no difference if the three day mail period is calculated before or after the period provided by Rule 59.03. In Minnesota, the practice is to combine the time limits of both rules, resulting in an eighteen day period. The result here is a period that ended on Tuesday, March 4. Consequently, the trial court correctly concluded that Rochester's notice of motion served on March 5 was untimely. The defect is jurisdictional, and the trial court could not consider the motion. *Differt v. Rendahl*, 306 N.W.2d 813, 814 n. 1 (Minn.1981).

### II.

■ The failure to present a timely post-trial motion restricts the scope of review of other issues presented in this appeal. Where there has been no such motion, review is limited to whether the evidence supports the findings of fact and whether

the findings sustain the conclusions of law and the judgment. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

■ Rochester contends that the parties' contract limits Rochester's liability and excludes certain warranties, and that the court erred in allowing the jury to consider the issue of damages because the contract expressly excludes the damages claimed by the Mattsons. The contract provisions contained on the back of the purchase agreement signed by the Mattsons are as follows:

4. The Seller is not liable for storage loss due to spoilage since the Seller has no control over the varied methods or techniques of ensiling forage crops. * * *

5. All goods, manufactured and/or sold by seller are warranted to be free from defects in material and workmanship (at the time of tender of delivery). THE FOREGOING WARRANTY SHALL CONSTITUTE THE SOLE AND EXCLUSIVE REMEDY OF THE BUYER, AND IS IN LIEU OF AND EXCLUDES ALL OTHER WARRANTIES NOT EXPRESSLY SET FORTH HEREIN, WHETHER EXPRESS OR IMPLIED BY OPERATION OF LAW OR OTHERWISE, INCLUDING BUT NOT LIMITED TO AND [sic] IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS. SELLER SHALL NOT BE LIABLE FOR INCIDENT OR CONSEQUENTIAL LOSS, DAMAGE OR EXPENSE, DIRECTLY OR INDIRECTLY ARISING FROM THE SALE, HANDLING OR USE OF SUCH GOODS OR FROM ANY OTHER CAUSE RELATING THERETO, SELLER'S LIABILITY HEREUNDER BEING EXPRESSLY LIMITED TO THE REPLACEMENT (IN THE FORM ORIGINALLY SHIPPED) OR REPAIR OF GOODS NOT COMPLYING WITH THIS AGREEMENT, OR AT SELLER'S ELECTION, TO THE REPAYMENT OF AN AMOUNT EQUAL TO THE PURCHASE PRICE OF SUCH GOODS,

WHETHER SUCH CLAIMS ARE FOR BREACH OF WARRANTY OR NEGLIGENCE. * * *

Initially, we note that there is no evidence that the Mattsons read this language prior to signing the contract or that it was ever pointed out to them. However, the trial court found that the limitations and exclusions were not unconscionable and therefore were enforceable. *See Luick v. Graybar Electric Co., Inc.*, 473 F.2d 1360, 1363 (8th Cir.1973). This language excludes express and implied warranties and incidental and consequential damages. Further, it excludes loss due to spoilage, which is the basis of the Mattsons' case. The contract was admitted into evidence at the trial, and the court allowed Rochester to amend its answer to plead limitation and exclusion of warranties based on the contract language. After the jury began its deliberations, Rochester moved to dismiss the action, arguing that no damages could be found as a matter of law because the contract excludes both incidental and consequential damages. In denying the motion, the trial court indicated that there was sufficient evidence to allow the jury to consider whether the contract had been modified. The court had previously stated:

I believe a jury could reasonably find, under the instructions I intend to give on modification of warranties, for example, that the warranty work for which no charge was made later on in applying the plastrete, if the jury finds that that essentially cured the problem, was the servicing of the silo, which is a further extension of the bargain between the parties * * *.

The evidence supports the trial court's decision that there was a fact question for the jury to consider regarding modification of the contract. The evidence also supports the conclusion that there had been a modification. The silo had been purchased without plastrete, and the contract indicates that the seller's liability is limited to repair or replacement of the silo as purchased. Yet, Rochester applied plastrete to the silo after the Mattsons repeatedly

complained of storage losses due to spoilage. As Rochester's counsel explained to the trial court, "There is no evidence whatsoever that * * * plastrete was ever ordered and I offer * * * that plastrete was clearly beyond the scope of the original order."

By furnishing an item not ordered, Rochester extended its liability beyond repair or replacement of nonconforming goods, as provided in the exclusionary language of item five in the contract. The modification affected the remainder of that provision, which would exclude both incidental and consequential damages without the modification. The modification also affected item four of the contract, which excludes liability for storage loss due to spoilage. That exclusion is expressly based upon the seller's inability to control ensiling methods used by farmers. Because the jury found that applying the plastrete cured the problem which was the cause of the spoilage, it indicates not only an extension of the bargain between the parties as the trial court stated, but also that the cause of the problem was not ensiling methods. As a result, the limitation arising from provision four of the contract would not be applicable.

We conclude that the trial court did not err in allowing the jury to consider whether the parties' contract had been modified. Further, evidence supports a conclusion that there had been a modification affecting the limitation of liability and the exclusion of incidental and consequential damages. Therefore, the trial court properly allowed the jury to consider the issue of damages.

### III.

■ The Mattsons claimed damages relating to lost feed, removal of silage, forced sale of the farm, lost investments and lost profits. The jury's verdict found total damages of $72,000, and apportioned $50,000 as incidental damages and $22,000 as consequential damages. Rochester argues that no incidental damages have been shown. The Uniform Commercial Code states:

Incidental damages resulting from a seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

Minn.Stat. § 336.2–715(1) (1984). The damages claimed by the Mattsons are not incidental damages. Rather, they are consequential damages, which include injuries to property proximately resulting from a breach. *Peterson v. Bendix Home Systems, Inc.*, 318 N.W.2d 50, 53 (Minn.1982).

■ There is no evidence supporting the finding of incidental damages, and that finding must be reversed. However, in addition to finding a breach of warranty which could give rise to incidental or consequential damages, the jury also found Rochester negligent. Negligence actions do not require identifying incidental and consequential damages. As a result, the total damage award, which has not been challenged by Rochester, is supported by sufficient evidence, and must be affirmed.

■ However, although the trial court reduced the amount of consequential damages by 30 percent to reflect the Mattsons' negligence, the incidental damages found by the jury were not so reduced. *See Peterson*, 318 N.W.2d at 55. Because the classification of damages is not relevant under the negligence claim, the total damage award must be reduced by 30 percent, not just the $22,000 portion of it. We remand to the trial court to enter a judgment consistent with this method of calculation.

### IV.

Rochester argues that there is insufficient evidence of causation to support the jury's verdict. According to Rochester, the Mattsons' case relies on inferring that a defect existed from the fact that damage has occurred, without eliminating other possible causes.

Juries may infer a defect in the product from circumstantial evidence. *Chatfield v. Sherwin-Williams Co.*, 266 N.W.2d 171, 175 (Minn.1978). If there are other conflicting inferences, the verdict will be upheld if the supporting inferences could reasonably be found to outweigh the conflicting inferences. *Erickson v. Strickler*, 252 Minn. 351, 355, 90 N.W.2d 232, 236 (1958). Only when the plaintiff's theory of causation is one among several equally likely possibilities has the plaintiff failed to satisfy its burden of proof. *Nelson v. Wilkins Dodge, Inc.*, 256 N.W.2d 472, 478 (Minn.1977). The evidence must be considered in the light most favorable to the prevailing party, and the verdict must be sustained unless it is manifestly and palpably contrary to the evidence. *Cobb v. Aetna Life Insurance Co.*, 274 N.W.2d 911, 917 (Minn.1979).

Rickey Mattson testified that he observed holes in the silo, although he did not specify how many holes were visible. An expert witness testified that the type of damage sustained was to a high probability caused by water entering the silo through holes. Rochester argues that the silage may have been cut too long or stored while its moisture content was too high, resulting in spoilage. However, there was testimony that silage cut and stored in the Mattsons' second silo at approximately the same time was not damaged and that ensiling methods used by them were the same as those used by other area farmers in the area without problem.

Although the evidence of causation is circumstantial, we conclude that the jury properly could have determined that it outweighs the conflicting inferences of causation presented by Rochester. There is sufficient evidence to support the verdict.

## V.

The Mattsons seek attorney's fees under Minn.Stat. § 8.31, subd. 3a (1984), which allows fees to be awarded when a person is injured by a violation of the Consumer Fraud Statute, Minn.Stat. § 325F.69, subd. 1 (1984). That statute defines consumer fraud as:

> The act, use, or employment by any person of any fraud [or] misrepresentation * * * with the intent that others rely thereon in connection with the sale of any merchandise * * *.

*Id.*

The jury found Rochester did not make a misrepresentation or use a deceptive practice during its relationship with the Mattsons. That finding is supported by the evidence. Therefore, the trial court did not abuse its discretion in determining that there had been no consumer fraud and in denying attorney's fees.

## DECISION

The trial court did not err in concluding that appellant's post trial motion was untimely or in allowing the jury to consider the issue of damages. There is sufficient evidence to support the verdict and the total award of damages. Because there is no evidence of incidental damages, that portion of the judgment must be reversed and the matter remanded for reduction of the total damages to reflect respondents' negligence. The court did not abuse its discretion in denying attorney's fees to respondents.

Affirmed in part, reversed in part and remanded.