**Mark Allan PLOCHER, petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. A03–1572.

Court of Appeals of Minnesota.

June 29, 2004.

Francis J. Eggert, Winsted, MN, for appellant.

Mike Hatch, Attorney General, Joel A. Watne, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by PETERSON, Presiding Judge; ANDERSON, Judge; and CRIPPEN, Judge.*

## OPINION

PETERSON, Judge.

This appeal is from a district court order dismissing appellant Mark Allan Plocher's

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

petition for judicial review of the revocation of Plocher's driver's license. The district court determined that it did not have subject-matter jurisdiction because Plocher's petition was untimely. Plocher argues that (1) the district court incorrectly applied Minn. R. Civ. P. 6.01 when it determined that his petition was untimely; and (2) he was denied due process of law because the notice of revocation that he received from respondent Commissioner of Public Safety misled him about his right to seek judicial review of the revocation. Because the notice of revocation incorrectly described the period during which Plocher could seek judicial review, we conclude that Plocher was denied due process of law, and we reverse and remand.

## FACTS

Respondent Commissioner of Public Safety revoked appellant Mark Allan Plocher's driver's license after police stopped Plocher for a traffic violation and a urine sample tested positive for controlled substances. The commissioner mailed Plocher a notice and order of revocation. Each page of the notice indicates that the mailing date was May 15, 2003. The notice also contains the following statement:

PETITION FOR JUDICIAL REVIEW

YOU HAVE THE RIGHT TO PETITION FOR A JUDICIAL REVIEW. PETITIONS MUST BE FILED IN WRITING AS OUTLINED IN MINNESOTA STATUTE, SECTION 169A.53, SUBDIVISION, 2, IN THE COUNTY IN WHICH THE INCIDENT OCCURRED AND WITHIN 30 DAYS FROM RECEIVING A NOTICE AND ORDER OF REVOCATION. IF YOU DO NOT PETITION FOR JUDICIAL REVIEW OF THE IMPLIED CONSENT REVOCATION EXACTLY AS PRESCRIBED IN MINNESOTA STATUTES, YOU LOSE THE RIGHT TO JUDICIAL REVIEW OF THE IMPLIED CONSENT REVOCATION.

On June 18, 2003, Plocher served and filed a petition for judicial review of the license revocation. The commissioner moved to dismiss the petition, arguing that the district court lacked subject-matter jurisdiction because Plocher did not file the petition within 30 days after he received the notice of revocation, as required by Minn.Stat. § 169A.53, subd. 2(a) (2002).

Plocher submitted an affidavit in which he stated that he received the notice of revocation on May 20, 2003; his address is as stated on the notice; he picks up his mail every day; and there was no notice of the revocation from the state before May 20, 2003.

Following a hearing, the district court determined that under Minn.Stat. § 169A.52, subd. 6 (2002), a mailed notice of revocation is deemed received three days after mailing, and the third day after notice was mailed to Plocher was May 18, 2003. Based on this date, the district court determined that because Minn.Stat. § 169A.53, subd. 2(a), requires a petition for judicial review of a license revocation to be filed within 30 days following receipt of a notice and order of revocation, Plocher had until June 17, 2003, to serve and file his petition for review. The district court concluded that Plocher's petition was untimely because it was not served and filed until June 18, 2003. The district court did not determine when Plocher actually received the notice and order of revocation.

The district court rejected Plocher's argument that under Minn. R. Civ. P. 6.01, two days should be added to the three-day period in Minn.Stat. § 169A.52, subd. 6, because May 15, 2003, was a Thursday,

and, therefore, the three-day mailing period included a Saturday and a Sunday.

The district court dismissed Plocher's petition for lack of subject-matter jurisdiction.

## ISSUES

1. Does Minn R. Civ. P. Rule 6.01 require that two days be added to the three-day mailing period in Minn.Stat. § 169A.52, subd. 6 (2002), when the three-day period includes a Saturday and a Sunday?

2. Did the notice and order of revocation that Plocher received violate his due-process rights by stating that a petition for judicial review must be filed within 30 days from receiving a notice and order of revocation?

## ANALYSIS

■ "The existence of subject matter jurisdiction is a question of law subject to de novo review on appeal." *Federal–Hoffman, Inc. v. Fackler*, 549 N.W.2d 93, 96 (Minn.App.1996), *review denied* (Minn. Aug. 20, 1996).

1. The commissioner revoked Plocher's driver's license pursuant to Minn.Stat. § 169A.52, subd. 4 (2002). A revocation under section 169A.52 becomes effective when the commissioner or a peace officer acting on behalf of the commissioner notifies the person of the intention to revoke and of revocation. Minn.Stat. § 169A.52, subd. 6 (2002).

■ The notice must advise the person of the right to obtain administrative and judicial review as provided in section 169A.53 (administrative and judicial review of license revocation). If mailed, the notice and order of revocation ... is deemed received three days after mailing to the last known address of the person.

*Id.*

Within 30 days following receipt of a notice and order of revocation ... pursuant to section 169A.52 (revocation of license for test failure or refusal), a person may petition the court for review. The petition must be filed with the district court administrator in the county where the alleged offense occurred, together with proof of service of a copy on the commissioner, and accompanied by the standard filing fee for civil, actions. Minn.Stat. § 169A.53, subd. 2(a) (2002). Timely filing is a jurisdictional requirement. *McShane v. Comm'r of Pub. Safety*, 377 N.W.2d 479, 481 (Minn.App.1985), *review denied* (Minn. Jan. 23, 1986).

■ Plocher argues that the district court incorrectly determined that his petition was not timely because May 15, 2003, was a Thursday, and, therefore, the three-day mailing period in Minn.Stat. § 169A.52, subd. 6, included a Saturday and a Sunday, which, under Minn. R. Civ. P. 6.01, should be excluded when computing the three-day period. We disagree.

Minn. R. Civ. P. 6.01 states:

In computing any period of time prescribed or allowed by these rules ... or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the court administrator inaccessible, in which event the period runs until the end of the next day which is not a one of the aforementioned days. When the period of time prescribed or allowed is less than 7 days, intermediate Saturdays,

Sundays, and legal holidays shall be excluded in the computation.

Under Plocher's argument, the three-day mailing period should be computed separately from the 30–day period for filing his petition. In *Mattson v. Rochester Silo, Inc.,* 397 N.W.2d 909, 913 (Minn.App. 1986), *review granted* (Minn. Mar. 13, 1987) *and order granting review vacated* (Minn. Sept. 15, 1987), this court rejected a similar argument with respect to a posttrial motion filed after receiving notice by mail of the filing of the trial court's findings of fact, conclusions of law, and order for judgment. In *Mattson,* the respondents mailed appellant notice of the court's order on Friday, February 14, 1986, and the rules of civil procedure provided that a notice of a posttrial motion shall be served within 15 days after service of notice of the filing of the order. *Id.* Also, Minn. R. Civ. P. 6.05 provided that, " '[w]henever a party. has the right or is required to do some act or take some proceeding within a prescribed period after the service of notice ... and the notice or paper is served by mail, three days shall be added to the prescribed period.' " *Id.* (omission in original) (quoting Minn. R. Civ. P. 6.05).

The appellant argued that under rule 6.05, the three-day period for the mailed notice of the district court's order would have ended on Monday, February 17, 1986, except that February 17 was a legal holiday, and when computing a period of time under Minn. R. Civ. P. 6.01, the last day of the period is not included if it is a Saturday, a Sunday, or a legal holiday, and the period runs until the end of the next day that is not a Saturday, a Sunday, or a legal holiday. *Id.* Therefore, appellant contended, the three-day period ended on Tuesday, February 18, and the 15–day period during which to file a posttrial motion began to run on February 19 and extended to March 5, the day appellant served notice of a posttrial motion. *Id.*

This court rejected the appellant's argument that the three-day period and the 15–day period should be computed separately and concluded that "[i]n Minnesota, the practice is to combine the time limits of both rules, resulting in an eighteen day period." *Id.* We conclude that although the three-day period and the 30–day period in issue in this case are established by statute, rather than by rule, we should follow the practice of combining both time limits into a single 33–day period.

It is apparent that the purpose of the three-day mailing periods in both Minn. R. Civ. P. 6.05 and Minn.Stat. § 169A.52, subd. 6, is to eliminate the need to determine when mailed notice is actually received. Because both provisions have the same purpose, they should be interpreted and applied in a consistent manner. Furthermore, although the three-day period in Minn.Stat. § 169A.52, subd. 6, is a period of time prescribed by statute, Plocher did not need to do anything during the three-day period. The prescribed period for Plocher to do something was the 30–day period that followed the three-day period. Therefore, treating the three-day period as a period of less than seven days from which "intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation" is unwarranted because Plocher had 30 days, not less than seven days, in which to act.

2. Plocher argues that he was deprived of due process of law because the notice and order of revocation that he received from the commissioner stated that he must file a petition for judicial review of the revocation within 30 days from receiving the notice and did not state that the notice was deemed to have been received three days after it was mailed.

 "This court reviews de novo the procedural due process afforded a party."

*Zellman ex rel. M.Z. v. Indep. Sch. Dist. No. 2758,* 594 N.W.2d 216, 220 (Minn.App. 1999), *review denied* (Minn. Jul. 28, 1999).

Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.

*Mullane v. Cent. Hanover Bank Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). The degree of notice required does not follow one specific, technical definition and varies "with the circumstances and conditions of each case." *In re Application of Christenson for a Permit to Drain Wetland 47–219,* 417 N.W.2d 607, 611–12 (Minn.1987). "[I]t is well established that a driver's license is a protectible property interest subject to due process protection." *McShane,* 377 N.W.2d at 482.

Citing *Goldsworthy v. State, Dep't of Pub. Safety,* 268 N.W.2d 46 (Minn.1978), and *McIntee v. State, Dep't of Pub. Safety,* 279 N.W.2d 817 (Minn.1979), *superceded in part by statute on other grounds as stated in Willems v. Comm'r of Pub. Safety,* 333 N.W.2d 619, 621 (Minn.1983), the district court determined that Plocher's due-process claim was without merit because it has long been established that due process does not even require actual receipt of a notice of license revocation for the revocation to be effective. But the issue in *Goldsworthy* and *McIntee* was whether the drivers constructively received the notices that the commissioner mailed. *McIntee,* 279 N.W.2d at 819–20; *Goldsworthy,* 268 N.W.2d at 48. Plocher does not argue that he did not receive the notice that the commissioner mailed to him; he acknowledges that he received the notice. Plocher's due-process claim is that he was misled by the incorrect statement in the notice that he had 30 days after receiving the notice to petition for judicial review.

The commissioner argues that Plocher's due-process claim focuses entirely on one phrase in the revocation notice and ignores other language in the notice that referred Plocher to the specific statute that governs judicial review of license revocations, Minn.Stat. § 169A.53, subd 2. The commissioner contends that had Plocher made an effort to review Minn.Stat. § 169A.53, subd 2, he would have seen a reference to Minn.Stat. § 169A.52, and if he had reviewed Minn.Stat. § 169A.52, he would have learned that Minn.Stat. § 169A.52, subd. 6, provides that when notice of revocation is mailed, the notice is deemed received three days after mailing. The commissioner also argues that it is a basic legal principle that all persons are charged with knowing the contents of statutes and regulations.

■ But the commissioner's arguments ignore the fact that the notice that Plocher received was misleading because, even though the commissioner mailed the notice to Plocher, the notice stated that Plocher had 30 days from receiving the notice to petition for judicial review. This statement was misleading because Minn.Stat. § 169A.52, subd. 6, which states that mailed notice is deemed received three days after mailing, modifies the general rule, stated in Minn.Stat. § 169A.53, subd. 2, that a person has 30 days following receipt of a notice and order of revocation to petition for judicial review. Therefore, when notice is mailed, the driver whose license has been revoked has 33 days from the day the notice was mailed, rather than 30 days from the day the notice was received, to petition for judicial review.

In *Raley v. Ohio,* 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959), the United

States Supreme Court drew a distinction between a notice from the state that is simply vague or contradictory and a notice that is actively misleading. *Raley* involved convictions of four appellants for refusing to answer questions put to them during sessions of the "Un–American Activities Commission" of the State of Ohio, which was part of the legislative branch of the Ohio government. *Id.* at 424, 79 S.Ct. at 1259. The appellants had claimed the privilege against self-incrimination and refused to answer the questions. *Id.* During the Commission sessions, "[t]he appellants were informed by the Commission that they had a right to rely on the privilege against self-incrimination afforded by art. I, § 10, of the Ohio Constitution." *Id.* at 425, 79 S.Ct. at 1260.

At the time that the appellants testified before the Commission, there was an Ohio immunity statute that extended to any person who appeared before a legislative committee and granted immunity from state prosecutions and penalties based on matters that the person testified about and prohibited use of the testimony as evidence in a criminal proceeding against the person who testified. *Id.* at 431, 79 S.Ct. at 1263. The Commission never told the appellants that this immunity existed; the Commission thought that the privilege against self-incrimination was available and positively advised the appellants that the privilege could be used. *Id.* at 431–32, 79 S.Ct. at 1263.

After refusing to answer questions, three of the appellants were convicted under an Ohio statute that provided that failing to answer as a witness, when lawfully required to answer, may be punished as a contempt, and the fourth appellant was convicted under an Ohio statute that punished persons summoned before a legislative committee who refused to answer a question regarding a matter under inquiry.

*Id.* at 424, n. 1, 79 S.Ct. at 1259 n. 1. The Ohio Supreme Court affirmed the convictions, holding that the Ohio immunity statute automatically removed any basis for claiming the privilege against self-incrimination, and, therefore, refusing to answer based on the privilege was an offense. *Id.* at 438, 79 S.Ct. at 1266.

The United States Supreme Court reversed and succinctly explained its decision as follows:

> The appellants were informed by the Commission that they had a right to rely on the privilege against self-incrimination afforded by art. I, § 10, of the Ohio Constitution. The Ohio Supreme Court, however, held that the appellants were presumed to know the law of Ohio—that an Ohio immunity statute deprived them of the protection of the privilege—and that they therefore had committed an offense by not answering the questions as to which they asserted the privilege. We hold that in the circumstances of these cases, the judgments of the Ohio Supreme Court affirming the convictions violated the Due Process Clause of the Fourteenth Amendment and must be reversed.... After the Commission, speaking for the State, acted as it did, to sustain the Ohio Supreme Court's judgment would be to sanction an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to him.

*Id.* at 425–26, 79 S.Ct. at 1260.

The Supreme Court explained that it did not need to decide whether simply failing to notify the appellants of the immunity statute at the inquiry violated due process because

> [t]his case is more than that; here the Chairman of the Commission, who clearly appeared to be the agent of the State

in a position to give such assurances, apprised three of the appellants that the privilege in fact existed, and by his behavior toward the fourth obviously gave the same impression.

*Id.* at 437, 79 S.Ct. at 1266.

And the Supreme Court explicitly rejected the Ohio Supreme Court's reasoning that because the appellants were presumed to know the law of Ohio, and an Ohio immunity statute deprived them of the protection of the privilege against self-incrimination, the Commission's statements that the appellants had a right to rely on the privilege against self-incrimination did not violate due process. *Id.* at 425, 79 S.Ct. at 1260. The Supreme Court explained,

> Here there were more than commands simply vague or even contradictory. There was active misleading. The State Supreme Court dismissed the statements of the Commission as legally erroneous, but the fact remains that at the inquiry they were the voice of the State most presently speaking to the appellants. We cannot hold that the Due [P]rocess [C]lause permits convictions to be obtained under such circumstances.

*Id.* at 438–39, 79 S.Ct. at 1266–67 (citation and footnote omitted).

We conclude that, like the Commission's statements to the appellants in *Raley* that the appellants had a right to rely on the privilege against self-incrimination, the commissioner's statement that Plocher had 30 days from receiving the notice of revocation to petition for judicial review was actively misleading. Although Plocher could have learned by reviewing the statutes that the commissioner's statement was legally erroneous, the statement was made in an official notice provided by the commissioner, speaking on behalf of the state. The notice provided by the commissioner is not appropriate to the nature of

the case because the commissioner chose to mail the notice and order of revocation to Plocher and, therefore, knew that the general rule that a person has 30 days following receipt of a notice and order of revocation to petition for review did not apply and, instead, the specific rule for mailed notice applied under Minn.Stat. §§ 169A.52, subd. 6, 169A.53, subd. 2. In spite of this knowledge, the commissioner stated only the general rule in the notice mailed to Plocher.

After the commissioner notified Plocher that he had 30 days from receiving notice of revocation to file a petition for judicial review of the revocation, it would be indefensible to allow Plocher's petition for review to be dismissed as untimely solely because it was not filed within 33 days after the notice was mailed. At a minimum, Plocher is entitled to a determination whether he filed his petition for review within 30 days after he actually received the notice and order of revocation. We, therefore, hold that dismissing Plocher's petition for judicial review as untimely because the petition was not filed within 33 days after the notice of revocation was mailed violated Plocher's right to due process of law, and we remand to permit the district court to determine whether Plocher served and filed his petition within 30 days after receiving the notice and order of revocation.

## DECISION

The district court correctly determined that Minn R. Civ. P. Rule 6.01 does not require that two days be added to the three-day mailing period in Minn.Stat. § 169A.52, subd. 6 (2002), when the three-day period includes a Saturday and a Sunday. But Plocher was denied due process of law when the commissioner notified him that a petition for judicial review of his driver's-license revocation must be filed

within 30 days from receiving a mailed notice and order of revocation. Therefore, the district court erred when it dismissed Plocher's petition for review as untimely solely because it was not filed within 33 days after the notice was mailed, rather than determining whether the petition was served and filed within 30 days after receiving the notice and order of revocation.

**Reversed and remanded.**