*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0477**

State of Minnesota,
Appellant,

vs.

Christian Phillip Oberender,
Respondent.

**Filed August 11, 2014
Reversed and remanded
Hooten, Judge**

Carver County District Court
File No. 10-CR-13-37

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark Metz, Carver County Attorney, Peter Ivy, Carver County Chief Deputy Attorney, Chaska, Minnesota (for appellant)

Michael W. McDonald, McDonald Law Office, Prior Lake, Minnesota; and

Richard P. Ohlenberg, Ohlenberg Law Office, P.C., St. Louis Park, Minnesota (for respondent)

        Considered and decided by Bjorkman, Presiding Judge; Ross, Judge; and Hooten, Judge.

**UNPUBLISHED OPINION**

**HOOTEN**, Judge

The state challenges the district court's pretrial order dismissing respondent's charge of being an ineligible person in possession of a firearm, arguing that the district court erred by concluding that respondent's due process rights were violated under the theory of entrapment by estoppel. Because there is no evidence that the government actively misled respondent into believing that he could lawfully possess firearms, and because respondent did not rely or reasonably rely on the government's statements or actions, we reverse and remand.

**FACTS**

In 1996, respondent Christian Phillip Oberender, as a juvenile, was adjudicated delinquent for a crime of violence, which resulted in a lifetime ban upon his possession of firearms.[1] *See* Minn. Stat. § 624.713, subd. 1(2) (2012). In 1998, Oberender was indeterminately committed to the Minnesota Security Hospital as mentally ill and dangerous (MID). In 2001, the district court discharged Oberender from probation. A year later, the Minnesota Department of Human Services granted Oberender's request for a full discharge from commitment. Neither the probation discharge order nor the commitment discharge order addresses the restoration of Oberender's civil rights or entitlement to possess firearms.

---

[1] Because Oberender's prior adjudication took place in juvenile court, those records are not public. *See* Minn. Stat. § 260B.163, subd. 1(c) (2012).

In February 2011, Oberender submitted a permit-to-purchase-firearms application to Wright County and was granted a permit.[2] In May or June 2012, Oberender submitted a permit-to-purchase-firearms application to Carver County.[3] The application contains a number of "yes" or "no" questions, including: "Have you ever been charged or adjudicated as a juvenile or convicted for what would be a crime of violence as defined in Minn. Stat. § 624.712 in Minnesota . . . and not been restored your civil rights?" and "Have you ever been committed to a treatment facility in Minnesota or elsewhere as a 'mentally ill,' 'developmentally disabled,' or 'mentally ill and dangerous to the public' person as defined in Minn. Stat. § 253B.02?" Oberender answered "no" to both.

The application includes a page entitled "RESTRICTIONS," which notifies applicants that "[i]ndividuals with restrictions shall not be entitled to possess a pistol or any other firearm." One restriction states, "Must not have been charged with a crime of violence while under the jurisdiction of the juvenile court . . . ." This restriction is followed by, "NOTE: The lifetime prohibition on possessing, receiving, shipping, or transporting firearms for persons convicted or adjudicated delinquent of a crime of violence in clause (2), applies only to offenders who are discharged from sentence or court supervision for a crime of violence on or after August 1, 1993." Another restriction states, "Must not have been judicially committed to a treatment facility in Minnesota or

---

[2] The record does not contain a copy of Oberender's application because Wright County authorities destroyed it.

[3] According to Oberender, he was told to obtain a permit from Carver County when he went to renew his Wright County permit. There was some confusion as to which county Oberender should apply to because Oberender has a Delano mailing address (Delano is in Wright County) but lives in Watertown Township (which is in Carver County).

3

elsewhere as 'mentally ill,' 'mentally retarded,' or 'mentally ill and dangerous to the public.'" Oberender mailed his completed application to Carver County. Carver County granted Oberender a permit.

Oberender purchased two shotguns and one rifle between December 2005 and January 2011 (before he applied for a permit to purchase firearms). Oberender only purchased firearms from federally licensed firearms dealers. Each time, he completed a federal "Over-the-Counter . . . Firearms Transaction Record" form, indicating "no" to the following questions: "Have you ever been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation?" and "Have you ever been adjudicated mentally defective . . . ?" And each time the dealer processed Oberender's information in the National Instant Criminal Background Check System (NICS), the database returned a status of "PROCEED."

On December 31, 2012, D.R., the mother of a woman that Oberender had dated, reported to law enforcement that Oberender may be a threat to her daughter or others. Carver County detectives investigated D.R.'s report and discovered that Oberender's Facebook page contained photographs of a firearm and a magazine. Concluding that Oberender is prohibited from possessing firearms, they executed a search warrant at Oberender's home on January 2, 2013. The officers recovered at least ten firearms, including three shotguns, two semi-automatic pistols, two revolvers, a rifle, a semi-automatic AK-47 assault rifle, and a Thompson semi-automatic rifle ("Tommy gun").

Two days later, Oberender provided a statement to Detective Bryan Stranberg. Oberender admitted that he applied for permits to possess firearms and owned several firearms. He explained that he understood that "everything was going to be sealed at the age of twenty-one" with regard to his prior adjudication and commitment and that "nobody was going to be allowed to access those records." Oberender believed that he could apply for a permit to purchase firearms because his records were sealed. He stated that his probation officer and attorney told him that he did not need to put his adjudication "down on anything," explaining, "[I]t didn't matter if it was for schooling, didn't matter, they just said I just didn't have to mark it down for anything." Oberender added that he never asked or was told about his right to possess firearms.

Oberender was charged with two counts of being an ineligible person in possession of a firearm in violation of Minnesota Statutes section 624.713 (2012), a felony count under subdivision 1(2) (adjudicated delinquent for a crime of violence) and a gross misdemeanor count under subdivision 1(3) (committed as a mentally ill and dangerous person). At a review hearing in October 2013, the parties and the district court reviewed Oberender's statements to Detective Stranberg, particularly those involving his attorney, who remains one of his attorneys in this appeal. Defense counsel emphasized that Oberender's statements establish that his attorney had told Oberender during his juvenile proceeding that his records would be sealed and would have no effect on his employment and schooling, but that there was no discussion regarding Oberender's eligibility to own or possess firearms.

Oberender testified at the review hearing, "I thought once I completed probation I was going to be done and over because I spent so much time in an incarceration correctional facility," meaning, "there would be nothing on my record. That it could be clean like it never even happened." The district court asked Oberender whether his probation officer told him anything about gun ownership or gun possession. Oberender responded, "No." The district court asked, "It's clear in your mind that you never had a discussion with [your attorney] concerning your ability to possess, own or purchase firearms as part of your juvenile case being wrapped up; is that correct?" Oberender responded, "Yes." The district court clarified, "No discussion?" Oberender affirmed, "No discussion."

Before trial, Oberender's counsel obtained a call-for-service report indicating that law enforcement visited Oberender's residence in July 2011. The report includes a log entry by a 911 dispatcher indicating that Oberender is "not allowed to have weapons / convicted of [crime of violence]." But a later log entry by another 911 dispatcher states, "civil rights restored." And the log includes an entry by Detective Sergeant Dewitt Meier: "Civil rights have been restored from . . . conviction."

Oberender moved to dismiss the felony charge based on the receipt of this newly acquired evidence. Oberender argued that this document establishes that "it was determined that Christian Oberender's civil rights have been restored from [his prior adjudication and] that now to prosecute him would be a violation of his Due Process Rights."

The district court held an evidentiary hearing in December 2013 to more fully develop the record on Oberender's due process argument. The Carver County Sheriff's Office employee who runs background checks on individuals applying for permits to possess firearms testified that she processed Oberender's application and granted him a permit. In doing so, she consulted at least five local, state, and federal databases. None indicated that Oberender was ineligible to possess firearms. She was not at the sheriff's office in the mid-1990s and testified that she relies "a lot" on the information that is provided on the application. Had she known about Oberender's crime of violence or MID commitment, she would not have granted him the permit. Similarly, she would have either denied Oberender's application or obtained more information before granting him a permit had Oberender checked "yes" to the questions relating to adjudication for a crime of violence or commitment.

Carver County Sheriff James Olson testified that he is ultimately responsible for granting or denying applications to possess firearms, but he delegates those duties to his staff. He testified that the information presented on firearms applications is "extremely important" when determining whether to grant or deny a permit. Sheriff Olson would have denied Oberender's application had Oberender checked yes to the questions asking about whether he had been adjudicated of a crime of violence or committed to a mental institution. Sheriff Olson also explained that only after contacting the county attorney's office and gathering additional information, rather than performing a records check, was he able to determine that Oberender was prohibited from possessing firearms.

Deputy Neil Kuhnau testified about a contact that he had with Oberender in October 2010. Oberender reported to Deputy Kuhnau that he was returning home after purchasing a shotgun when his neighbor confronted him and pointed a gun at his head. Deputy Kuhnau did not discuss with Oberender whether he was entitled to have a shotgun and did not arrest Oberender.

Sergeant Meier testified about his July 2011 visit with Oberender. A caller reported that Oberender was shooting a firearm and was not allowed to possess firearms. When he arrived at Oberender's residence, Sergeant Meier met with three individuals, including Oberender, and they admitted that they had been shooting. Sergeant Meier did not observe any firearms and believed that the group was shooting in a safe direction. He then left. Sergeant Meier received information from another officer who believed that Oberender could possess firearms. Sergeant Meier entered that information on the call-for-service log. Sergeant Meier testified that he had contact with Oberender in the past but never told Oberender that he could possess firearms, and that to his knowledge none of his staff had either.

Oberender testified, again, that his attorney and probation officer told him that his records were sealed and that, to him, that meant, "I didn't have to write down on documentation for work and stuff like that, it was not going to show up." He stated that neither his attorney nor his probation officer told him that he could possess firearms, that he never received any documents from any government actor, including the Carver County Sheriff's Office, stating that he could possess firearms, and that he never petitioned the district court to restore his right to possess firearms. He testified that he

8

believed that he could possess a firearm based on applying to purchase firearms at licensed dealers and having his applications returned as approved.

Oberender agreed that his adjudication involved an act of violence. When asked about filling out the applications to possess firearms, Oberender claimed he had not understood what "adjudicated" meant at that time, and that he answered "no" to the questions regarding adjudication of a crime of violence and commitment because he was told that his civil rights had been restored. When asked who told him not to include information relating to his adjudication or commitment, Oberender responded, "I was told by several different people." Oberender never inquired about the questions on the permit-to-purchase-firearms applications. Oberender testified that neither Sergeant Meier nor Deputy Kuhnau told him that his civil rights were restored or that his right to possess firearms had been reinstated. But Oberender claimed that based on their visits and their failure to charge him, he believed that he could possess firearms.

The district court granted Oberender's motion and dismissed the felony count on the ground that "the State has not carried its burden of proof justifying the continuation of the charge[] . . . on due process grounds." The district court reasoned "[t]hat by its repeated conduct, passively and actively, the State has misled [Oberender] on his ability to obtain and possess firearms in a lawful manner." "The keys in this matter are not the inaccuracies put forth by [Oberender] on the applications for weapon ownership and permitting," the district court explained, "but the repeated breakdowns and even failures of the law enforcement and court systems which resulted in [Oberender] obtaining the number of weapons referenced in th[is] proceeding."

9

The state appeals.

## D E C I S I O N

The state may appeal from any pretrial order, subject to certain exceptions. Minn. R. Crim. P. 28.04, subd. 1(1). We reverse a pretrial probable-cause dismissal "only if the state demonstrates clearly and unequivocally that the district court erred in its judgment and, unless reversed, the error will have a critical impact on the outcome of the trial." *State v. Trei*, 624 N.W.2d 595, 597 (Minn. App. 2001), *review dismissed* (Minn. June 22, 2001). The exceptions to rule 28.04 do not apply here, and dismissal of a charge has a critical impact on the outcome of a trial. *State v. Myers*, 711 N.W.2d 113, 115 (Minn. App. 2006), *aff'd*, *State v. Melde*, 725 N.W.2d 99 (Minn. 2006). We agree with the parties that the state meets its burden of establishing critical impact.

The state contends that the district court erred by concluding that prosecuting Oberender for being an ineligible person in possession of firearms under subdivision 1(2) of Minnesota Statutes section 624.713 violates Oberender's due process rights. "Whether a due process violation has occurred presents a question of constitutional law, which we review de novo." *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012).

The Due Process Clause of the United States Constitution provides that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1. Similarly, the Minnesota Constitution provides that "[n]o person shall be . . . deprived of life, liberty or property without due process of law." Minn. Const. art. I, § 7.

10

The district court dismissed the felony charge under a theory of "entrapment by estoppel." Entrapment by estoppel, or government estoppel, is a "long-established rule that a government may not officially inform an individual that certain conduct is permitted and then prosecute the individual for engaging in that same conduct." *State v. McKown*, 475 N.W.2d 63, 68 (Minn. 1991). It is a narrow exception to the general rule that ignorance of the law is no defense. *United States v. Funches*, 135 F.3d 1405, 1407 (11th Cir. 1998). Entrapment by estoppel is related to entrapment, but is a distinct concept. 9 Henry W. McCarr & Jack S. Nordby, *Minnesota Practice* § 47:29 (4th ed. 2005).

> The defense of entrapment turns on the subjective intent of the defendant: It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play. In contrast, entrapment by estoppel rests on a due process theory which focuses on the conduct of the government officials rather than on a defendant's state of mind.

*United States v. Batterjee*, 361 F.3d 1210, 1218 (9th Cir. 2004) (quotations and citation omitted). Put another way, "entrapment by estoppel rests upon principles of fairness, not defendant's mental state." *United States v. Smith*, 940 F.2d 710, 714 (1st Cir. 1991).

"[T]he defense requires: (1) an official, 'authoritative' statement or act by a government agent or agency; (2) which the actor relies upon; and (3) whose reliance is in good faith." McCarr & Nordby, *supra*, § 47:29. Courts invoke the doctrine of entrapment by estoppel with "great reluctance." *United States v. Gutierrez-Gonzalez*, 184 F.3d 1160, 1166 (10th Cir. 1999) (quotation omitted).

The district court dismissed the charge because it concluded that the government's mistakes, omissions, and missed opportunities resulted in Oberender being able to obtain and possess firearms. In doing so, the district court failed to analyze the entrapment-by-estoppel elements or support its conclusions with citation to legal support. Because our review of this issue is de novo, we independently analyze the record regarding the government's conduct and Oberender's reliance on it to determine whether the district erred by dismissing the charge.

## A.    The government's statements or actions

A due process violation under the entrapment-by-estoppel theory requires that the government actively misled the defendant by authoritatively assuring him that certain conduct is lawful. *Raley v. Ohio*, 360 U.S. 423, 438, 79 S. Ct. 1257, 1266 (1959); *see also Plocher v. Comm'r of Pub. Safety*, 681 N.W.2d 698, 705 (Minn. App. 2004) (concluding that the commissioner's statements that defendant had 30 days from receiving notice of revocation to petition for judicial review was "actively misleading"). Put another way, the government must have "effectively advised" Oberender that he had a right to possess firearms. *Whitten v. State*, 690 N.W.2d 561, 566 (Minn. App. 2005).

### 1.  Probation discharge order

The district court found that neither Oberender's probation discharge order nor the commitment discharge order addresses the restoration of Oberender's civil rights or entitlement to possess firearms. Oberender contends that these omissions render his case similar to our decision in *Whitten*, where we reversed an order denying postconviction relief and vacated defendant's conviction of being an ineligible person in possession of a

12

firearm because defendant's probation discharge order "effectively advised" defendant that he could lawfully possess firearms. *Id.* We disagree.

In *Whitten*, defendant had been previously convicted of a nonviolent felony, was sentenced to probation, and was later discharged from probation. *Id.* at 562. The district court's discharge order stated that defendant "was discharged from probation and restored to *all* civil rights and to full citizenship with full right to vote and hold office *the same as if said conviction had not taken place*." *Id.* (quotation omitted). The order also included an unchecked box stating, "You are not entitled to ship, transport, possess or receive a firearm until 10 years have elapsed since you have been restored to civil rights and during that time you are not to have been convicted of any other crime of violence." *Id.* at 563. Defendant was later arrested, charged, and pleaded guilty to unlawful possession of a firearm. *Id.* He petitioned for postconviction relief, but the postconviction court denied his petition, stating that the failure to check the box was "a clerical mistake." *Id.* at 563, 565.

We reversed the postconviction court's order because "permitting the state to charge appellant 'for exercising a privilege which the State clearly had told him was available to him' is much more than a clerical mistake, it is 'the most indefensible sort of entrapment.'" *Id.* (quoting *Raley*, 360 U.S. at 438, 79 S. Ct. at 1266). We explained:

> The state cannot indicate that a person has the right to possess firearms when all his civil rights are reinstated, tell him all his civil rights are reinstated, and then tell him that he should have known he could not possess a firearm. Because the district court order effectively advised appellant that he had the right to possess firearms, the Due Process Clause of the

13

> Minnesota Constitution and the Fourteenth Amendment to the
> United States Constitution prohibit his conviction.

*Id.* at 566.

*Whitten* is distinguishable. Unlike the defendant in *Whitten*, Oberender was adjudicated of a violent felony. And Oberender's discharge order did not state that all of his civil rights were restored or that he was eligible to possess firearms. Also, unlike the discharge order in *Whitten*, the discharge order here does not actively mislead or effectively advise Oberender of his right to possess firearms. *See State v. Krzeszowski*, 24 P.3d 485, 487, 490 (Wash. Ct. App. 2001) (rejecting defendant's entrapment-by-estoppel argument that the district court's restoration of his civil rights after being discharged from probation led him to believe that he also had a right to possess firearms because the district court "did not actively or affirmatively represent to him that he could possess firearms").

Oberender is correct that upon his discharge from juvenile court, the court failed to provide the statutorily-required notice that he was "prohibited from possessing a pistol or semiautomatic military-style assault weapon for the remainder of [his] lifetime, and that it is a felony offense to violate this prohibition." *See* Minn. Stat. § 624.713, subd. 3 (2012). But, the statute also clearly provides that the failure of the court to provide this information to the juvenile does not affect the applicability of the prohibition or the felony penalty for such violation. *Id.*

## 2.  Statements of probation officer and defense attorney

The state argues that the district court's finding that Oberender's probation officer and attorney "informed him that his civil rights were restored as part of the termination of [his juvenile] proceeding and his discharge from probation" is clearly erroneous. We agree, and further conclude that neither the probation officer nor the attorney actively misled or effectively advised Oberender into believing that he could lawfully possess firearms.

There is no evidence in the record indicating that Oberender's probation officer or attorney informed him that his civil rights were restored. Rather, the evidence shows that Oberender's probation officer and attorney focused on the sealing of his juvenile records and whether he needed to disclose his adjudication. Oberender does not dispute that neither his probation officer nor his defense attorney informed him that he had a right to possess firearms or otherwise discussed the issue with him. Furthermore, because entrapment by estoppel depends on government actions or statements, *see McKown*, 475 N.W.2d at 68, any statement made by Oberender's defense attorney cannot sustain his claim of entrapment by estoppel.[4]

There is also no support for Oberender's claim that all of his civil rights were restored or the state's argument that none of his civil rights were restored upon his

_____

[4] The record is unclear whether Oberender's attorney during his juvenile proceeding was privately retained or publically appointed, but even if the attorney was serving as a public defender, his statements as counsel to Oberender do not constitute government action. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 102 S. Ct. 445 (1981) (stating that, in regard to a § 1983 claim, "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding").

15

discharge from juvenile court. As a matter of law, since Oberender had been adjudicated of a crime of violence, his civil rights, including his right to vote and hold office, were restored when he was discharged, but his right to possess firearms for the remainder of his life was not restored. *See* Minn. Stat. § 609.165, subds. 1 (providing that discharge shall restore the person to "all civil rights and to full citizenship, with full right to vote and hold office, the same as if such conviction had not taken place"), 1a (providing that a person convicted of a crime of violence is "not entitled to ship, transport, possess, or receive a firearm for the remainder of the person's lifetime"), 1b (providing that a person convicted of a crime of violence commits a felony if he "ships, transports, possesses, or receives a firearm") (2012).

### 3. Gun permits

In support of its dismissal of the felony charge against Oberender, the district court also appears to have concluded that Oberender was actively misled by Wright and Carver counties when they issued Oberender permits to possess firearms. We disagree.

The issuance of a permit to possess firearms is not a government statement giving rise to an entrapment-by-estoppel due process violation. In *United States v. Hullette*, the Eighth Circuit rejected defendant's entrapment-by-estoppel argument in part because "a report generated from the National Instant Criminal Background Check System (NICS) permitting the dealer to 'proceed' with a firearms sale is not the type of statement giving rise to the entrapment-by-estoppel defense. *The NICS signal to proceed would at most indicate that [defendant's] felony conviction was not listed in the federal database*." 525 F.3d 610, 612 (8th Cir. 2008) (per curiam) (emphasis added). Here, the government

16

employee who processed Oberender's application went through her regular routine of checking various databases. None indicated Oberender's ineligibility. At most, the grant of the permits merely indicated that Oberender's adjudication was not in the relevant databases.

The district court found that Oberender purchased firearms from licensed dealers and subjected himself to the background checks associated during each purchase. Oberender points out that he "had never been turned down when he tried to purchase a firearm." Indeed, each time a dealer processed Oberender's name in NICS, it returned a status of "PROCEED." But, again, a report generated from NICS permitting the dealer to proceed with a firearms sale is not a government statement giving rise to the entrapment-by-estoppel defense. *Id.*

### 4. Collateral contacts with law enforcement

The district court found that Carver County law enforcement had collateral contacts with Oberender, knew that he possessed guns, and failed to charge him. The district court erred by concluding that these interactions actively misled Oberender to believe that he could lawfully possess firearms. The officers did not testify that they told Oberender that he was entitled to possess firearms, and Oberender conceded that they never told him that he had a right to possess firearms. Although "a person does not have to be told that certain conduct is legal to trigger this constitutional protection," *State v. Akers*, 636 N.W.2d 841, 844 (Minn. App. 2001), the officers' contacts did not implicate due process concerns because "a mere absence of prior prosecutions does not constitute 'active misleading,'" *United States v. Mann*, 517 F.2d 259, 270 (5th Cir. 1975). *Cf. State*

17

*v. Strok*, 786 N.W.2d 297, 303 (Minn. App. 2010) ("A prosecutor justifiably may choose to charge or not charge a person based on a report of criminal conduct, and may choose to pursue or not pursue an alleged offense, based on many legitimate factors that are not subject to review by the judiciary."). At most, the acts passively misled Oberender, which is not enough to establish a due process violation.

**B.      Oberender's reliance on the government's statements or actions**

Even if the above government statements and acts qualified as authoritative or actively misleading, Oberender must have reasonably relied upon them in order for there to be an entrapment-by-estoppel due process violation. *See Batterjee*, 361 F.3d at 1216. The record fails to support a finding that Oberender relied or reasonably relied on the government's statements or actions.

The timeline of events indicates that Oberender did not rely on the permits, NICS status results, or collateral contacts with officers to support his belief that he could legally possess firearms. Oberender began purchasing firearms well before these government statements or actions occurred. Moreover, the NICS report that the dealer can proceed to sell a firearm to Oberender is a federal government statement, not one from Minnesota. Oberender cannot rely on a statement from another jurisdiction to support an entrapment-by-estoppel due process violation. *See United States v. Perry*, 531 Fed. Appx. 770, 772 (8th Cir. 2013) (holding that a defendant charged with a federal offense may not rely on representations made by state or local officials); *Haveri v. Comm'r of Pub. Safety*, 552 N.W.2d 762, 767 (Minn. App. 1996) (rejecting defendant's claim that he was misled by a

18

South Dakota officer's statement in part because "[t]he South Dakota police officer cannot speak for the State of Minnesota"), *review denied* (Minn. Oct. 29, 1996).

To the extent Oberender did rely on the state's actions or statements, his reliance was not reasonable. "[A] defendant's reliance is reasonable if a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries." *Batterjee*, 361 F.3d at 1216–17 (quotations omitted). The defendant must present the government with "all the relevant historical facts" *before* relying on the government's representation that he may engage in certain conduct. *United States v. Tallmadge*, 829 F.2d 767, 774 (9th Cir. 1987). The Carver County permit application clearly put Oberender on notice by listing restrictions that prohibit persons adjudicated of violent crimes or committed as mentally ill and dangerous from applying for permits. Oberender ignored these restrictions, failed to accurately answer the relevant questions, and mailed in his application anyway. And Oberender's claim that he did not understand what "adjudicated" meant until recently further indicates that his reliance on the permits was unreasonable. *See United States v. Weitzenhoff*, 35 F.3d 1275, 1291 (9th Cir. 1993) (noting that if defendants "had had a genuine desire to obey the law, they would have sought advice from the appropriate authorities").

Moreover, when a defendant lies to the government, his reliance on government representations is not reasonable. *See United States v. Kieffer*, 621 F.3d 825, 833–34 (8th Cir. 2010) (determining that entrapment-by-estoppel did not apply to defendant who claimed that the government led him to believe that he could practice before the Ninth Circuit when defendant conceded that he never passed the bar or attended law school).

19

Oberender made false statements on the permit applications when answering questions regarding his adjudication and mental illness. At oral argument, Oberender's counsel was unable to cite to a case in which a defendant successfully maintained an entrapment-by-estoppel due process violation when the defendant made misstatements to the government. And despite our thorough research, we are unable to find such a case.

In sum, we conclude that the district court erred by concluding that Oberender's due process rights would be violated by the state's prosecution of him as an ineligible person in possession of a firearm under subdivision 1(2) of Minnesota Statutes section 624.713. We share the district court's concern that the government made a number of mistakes and omissions that gave rise to Oberender's ability to obtain firearms. But the government did not actively mislead or effectively advise Oberender that he had a right to possess firearms, and Oberender did not rely or reasonably rely upon any government statements or actions such that he may claim an entrapment-by-estoppel due process violation.[5]

**Reversed and remanded.**

---

[5] We clarify that Oberender may not present this theory as a defense to a jury because based upon this record and the undisputed material facts, we have determined that entrapment-by-estoppel does not apply as a matter of law. *See* Minn. R. Crim. P. 10.02, subd. 2 ("Defenses, objections, issues, or requests that can be determined without trial on the merits must be made before trial by a motion to dismiss or to grant appropriate relief."); *cf. United States v. Levin*, 973 F.2d 463, 467–70 (6th Cir. 1992) (affirming dismissal of all but 15 counts of a 560-count indictment where defendant had asserted entrapment by estoppel in a pretrial motion to dismiss and the government had conceded the facts were not in dispute).